RUTHERFORD v CHRYSLER MOTORS CORPORATION

1. Products Liability—Negligence—Manufacturers—Care in Design—Risk to Product's User—Unreasonable Risk.

   A manufacturer may be liable for injuries caused by its failure to exercise reasonable care in the design of a product where its negligence causes an unreasonable risk to be imposed upon the user of the product.

2. Products Liability—Negligence—Manufacturers—Reasonable Care—Risk to Product's User—Unreasonable Risk.

   General negligence principles are applicable where injuries or enhanced injuries are due to a manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury.

3. Products Liability—Negligence—Manufacturers—Negligent Design—Unreasonable Danger—Likelihood of Harm—Gravity of Harm—Avoidance of Harm—Burden of Precautions—Balancing Interests.

   Liability for negligent design is imposed upon the manufacturer of a product only when an unreasonable danger is created, and whether this has occurred is determined by general negligence principles which involve a balancing of the likelihood of harm and the gravity of harm, if it happens, against the burden of the precautions which would be effective to avoid the harm.

4. Products Liability—Negligence—Duty of Reasonable Care—Manufacturers—Product Design—Unreasonable Risk—Foreseeable Risk—Misuses Reasonably Anticipated.

   A manufacturer's duty to use reasonable care in product design in order to guard against unreasonable and foreseeable risks extends to misuse of the product which may be reasonably anticipated.

5. Products Liability—Automobiles—Collisions—Manufacturers—Duty of Reasonable Care—Product Design and Manufacture—Eliminating Risk of Injury—Unreasonable Risk—Foreseeable Injury—Negligence—Breach of Implied Warranty.

   A manufacturer of an automobile has a duty to so design and

Reference for Points in Headnotes
[1–5] 63 Am Jur 2d, Products Liability § 26.

manufacture his product as to eliminate any unreasonable risk of foreseeable injury to its occupants as a result of a collision for which the manufacturer may not be responsible; for the lack of reasonable care in the face of such duty he may be answerable in a negligence action, and for the sale of a vehicle defective in such respect he may be answerable for breach of implied warranty.

Appeal from Wayne, John L. Kadela, J. Submitted Division 1 December 3, 1974, at Detroit. (Docket No. 16290.) Decided April 23, 1975. Leave to appeal granted, 394 Mich 823.

Complaint by Ann and Charles Rutherford against Chrysler Motors Corporation and Chrysler Corporation for damages for injuries suffered when an automobile's front seat track assembly disengaged and slid backwards as a result of a rear end impact. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Marston, Sachs, O'Connell, Nunn & Freid, P. C.* (by *Barry P. Waldman),* for plaintiffs.

*Charles R. Taylor,* for defendants.

Before: J. H. GILLIS, P. J., and V. J. BRENNAN and PETERSON,* JJ.

PETERSON, J. On December 27, 1968, plaintiffs were driving on Highway I-96 from Detroit to Muskegon to spend the Christmas holidays, accompanied by their small son and Mrs. Rutherford's sister. Rutherford was driving their car, a 1967 Dodge Dart. His sister-in-law shared the bench type front seat, while his wife sat in the rear seat holding the boy on her lap. Near Lansing, the car

---

* Circuit judge, sitting on the Court of Appeals by assignment.

spun on ice and the rear end of the car struck a bridge abutment. No one was injured in the impact proper, but the front seat track assembly disengaged as a result of the rear-end impact and slid backwards, inflicting crushing injuries to Mrs. Rutherford's legs.

The weight of the seat was 65 to 70 pounds, of Rutherford 150 pounds, and of his sister-in-law 107 pounds. The total combined weight of seat and passengers was thus only 322 to 327 pounds. Prior to losing control of the car, Rutherford had been driving at about 60 miles per hour. The speed of the car at impact with the bridge abutment was variously estimated at from less than 25 miles per hour to 35 miles per hour.

Plaintiffs brought this action alleging breach of implied warranty of fitness and negligence in design and manufacture of the car.[1] It was their claim that the seat track assembly was so designed and manufactured as to be susceptible of disengaging on low-speed impact. In support of their claim, plaintiffs called two experts from the automobile industry, an engineer and a physicist, whose testimony was that the design of the seat track assembly was without strength, that it would disengage on low-speed impact,[2] that defendant's own testing records reflected insignificant strength in the seat assembly, and that a seat track assembly could and should be designed to withstand the kind of impact evidenced on plaintiff's car.

At the close of plaintiff's proofs, defendants

---

[1] The complaint contained a third count, pleading "strict liability in tort". We do not understand the doctrine of strict liability to be a part of Michigan jurisprudence and do not choose to make it such.

[2] One expert witness, noting that his weight and that of counsel totaled about 430 pounds, testified that were they on the Dart front seat, an impact at as little as 3 to 5 miles per hour would disengage the seat.

moved for directed verdict on the ground that there is no duty imposed on a manufacturer to use reasonable care in designing automobiles so as to reduce unreasonable risk of injury in accidents not caused by any defect in the automobile. The trial judge granted the motion, stating that "Michigan law does not impose an implied warranty upon the manufacturer to build a crashproof car".[3]

We agree that Chrysler had no duty to build a crash-proof car. The question, however, was whether Chrysler had a duty to build a "crashworthy" car. Beyond the duty of the manufacturer to design and build a vehicle which will not cause an accident from its own defect or malfunction, is there a duty on the manufacturer to so design and build the vehicle that it will protect its occupants against unreasonable injury in the event of a collision, whatever the cause of that collision?[4]

So much has been said on the subject in the past dozen years,[5] that little remains to be said except to announce which answer will be made now that the question has been raised in Michigan. Our

[3] The motion was also granted as to the negligence count, presumably for the same reason; *i.e.,* that there was no duty upon the manufacturer to be negligently breached.

[4] "Crashworthiness" is defined in the Motor Vehicle Information and Cost Savings Act as meaning "the protection that a passenger motor vehicle affords its passengers against personal injury or death as a result of a motor vehicle accident". Motor Vehicle Information and Cost Savings Act, § 2(14), 86 Stat 947, 948 (1972), 15 USCA 1901(14).

Put somewhat differently, some commentators have spoken of a "second collision doctrine" which would hold the manufacturer responsible for injuries from the collision of the passenger with the interior part of the vehicle after the initial collision despite the fact that no defect or malfunction of the vehicle caused the initial collision. 52 Iowa L Rev 953 (1967); 1971 Ins L Journal 583.

[5] *See* 6 Southwestern UL Rev 1 (1974); 58 NW L Rev 299 (1963); 55 Cal L Rev 645 (1967); 24 Vanderbilt L Rev 862 (1971); 52 Iowa L Rev 953 (1967); 1971 Ins L Journal 583; 52 Corn L Quarterly 444 (1967); 42 Notre Dame Lawyer 111 (1966); 71 Yale LJ 816 (1962).

answer, finding such a duty, requires reversal of the trial court. We do so with as much brevity as the history of the "crashworthy" doctrine allows.

The first appellate consideration of the question in *Evans v General Motors Corp,* 359 F2d 822 (CA 7, 1966), involved a death caused by a broadside collision and the claim that defendant's use of an "X" frame in its vehicle, rather than the perimeter frame then in general use, failed to provide reasonable protection against death or serious injury from such a collision. A divided court held that the complaint failed to state a cause of action since the manufacturer's sole duty was to produce a vehicle reasonably fit for its intended purpose.[6] That intended purpose, said *Evans'* majority, did not include collisions with other objects notwithstanding the foreseeability of such collisions.[7]

In *Larsen v General Motors Corp,* 391 F2d 495 (CA 8, 1968), a head-on collision drove the steering shaft of a Corvair automobile, spearlike, into its driver's head. The Court accepted the basic premise of *Evans* as to the manufacturer's duty:

"to use reasonable care under the circumstances in the design of a product * * * [though he is] not an insurer that his product is incapable of producing injury, and this duty of design is met when the article is safe for its intended use and when it will fairly meet any 'emergency of use' which is foreseeable".[8]

[6] *See* Annotation, 76 ALR2d 91, § 1(b), p 94, and *Gossett v Chrysler Corp,* 359 F2d 84, 87 (CA 6, 1966).

[7] Furthermore, said *Evans,* apparently viewing an automobile as an unsafe place in which to be, a manufacturer need not render the vehicle "more" safe where the danger to be avoided is obvious to all, citing *Campo v Scofield,* 301 NY 468; 95 NE2d 802 (1950). 359 F2d at 824.

[8] 391 F2d at 501, citing Annotation, 76 ALR2d 91. The language quoted is essentially that appearing in *Gossett v Chrysler Corp, infra,* fn 6.

But the Court went on to note the statistical probabilities of motor vehicle collisions, not to say that duty arises from foreseeability of risk, but in recognition that the environment in which a product is used must be taken into consideration by the manufacturer.[9] From this consideration, *Larsen* departed from *Evans,* saying at pp 502–503:

"We think the 'intended use' construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident *and the resulting injury,* usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, all are foreseeable. *Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable.* The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.

\* \* \*

"This duty of reasonable care in design rests on

---

[9] Citing *Spruill v Boyle-Midway, Inc,* 308 F2d 79, 83 (CA 4, 1962), wherein the Court said: " 'Intended use' is but a convenient adaptation of the basic test of 'reasonable foreseeability' framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence."

common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of his product *to eliminate any unreasonable risk of foreseeable injury.* The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many common-sense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here." (Emphasis added.)

From *Evans* and *Larsen,* the ranks have divided, and we are cited to numerous decisions following each. We think those derived from *Larsen* to be the better reasoned and note particularly *Mickle v Blackmon,* 252 SC 202; 166 SE2d 173 (1969), Annotation, 42 ALR3d 560, *Perez v Ford Motor Co,* 497 F2d 82 (CA 5, 1974), *Friend v General Motors Corp,* 118 Ga App 763; 165 SE2d 734 (1968), *cert dismissed* 225 Ga 290; 167 SE2d 926 (1969), *Bolm v Triumph Corp,* 33 NY2d 151; 350 NYS2d 644; 305 NE2d 769 (1973). And see *Dreisonstok v Volkswagenwerk, AG,* 489 F2d 1066, 1071 (CA 4, 1974), noting

"The key phrase in the statement of the *Larsen* rule is *'unreasonable risk* of injury in the event of a collision', not foreseeability of collision. The latter circumstance is assumed in collision cases under the *Larsen* principle; it is the element of 'unreasonable risk' that is uncertain in such cases and on which the determination of liability or no liability will rest. It would patently be unreasonable 'to require the manufacturer to provide for every conceivable use or unuse of a car.' Nader & Page, Automobile Design and the Judicial Process, 55 Cal L Rev 645, 646. Liability for negligent design thus 'is imposed only when an unreasonable danger is cre-

ated. Whether or not this has occurred should be deter-
mined by general negligence principles, which involve a
balancing of the likelihood of harm, and the gravity of
harm if it happens against the burden of the precau-
tions which would be effective to avoid the harm.'"
(Citing *Larsen, supra,* p 502, fn 3.)

Defendant suggests that Michigan has already
opted for the *Evans* view, citing *Farr v Wheeler
Manufacturing Corp,* 24 Mich App 379; 180 NW2d
311 (1970), which in turn quoted from *Gossett v
Chrysler Corp,* 359 F2d 84 (CA 6, 1966). The *Gos-
sett* quotation, however, is but generalized state-
ment of the proposition from Annotation, 76
ALR2d 91, appearing in *Larsen,* above, and does
not go to the scope of "intended use". Indeed,
there was no need for *Farr* to explore that ques-
tion since the product there involved, a pipe cut-
ter, broke while being used in the task of cutting
pipe.

While not precisely in point, we think a better
clue to Michigan's view of product liability may be
found in *Byrnes v Economic Machinery Co,* 41
Mich App 192; 200 NW2d 104 (1972). The plaintiff
in *Byrnes* was injured while adjusting industrial
machinery after removal of a safety guard. In
response to defendant's claim that removal of the
guard constituted misuse so that the injury was
not incurred during "intended use", the Court
found that the adjustments involved were not
misuse but usual maintenance and added that,
even so, the manufacturer's duty to use reasonable
care in product design to guard against unreasona-
ble and foreseeable risks extended to misuse which
may be reasonably anticipated.[10] If anticipated

[10] *Ibid,* p 201, citing *Brown v General Motors Corp,* 355 F2d 814 (CA
4, 1966), and *Marker v Universal Oil Products Co,* 250 F2d 603 (CA
10, 1957). *And see Coger v Mackinaw Products Co,* 48 Mich App 113;
210 NW2d 124 (1973), where the Court rejected the argument of
*Evans* and *Campo v Scofield, infra,* fn 7, that the manufacturer had

misuse of industrial machinery creating unreasonable risk of foreseeable injury gives rise to a duty to exercise care in design of that machinery, should the manufacturer of the family automobile, in which four times as many accidental deaths occur as in all employment related accidents,[11] be free of any duty in design and manufacture to avoid unreasonable risk of foreseeable collision-caused injury?

Agreeing with *Larsen,* we hold that a manufacturer of any automobile has a duty to so design and manufacture his product as to eliminate any unreasonable risk of foreseeable injury to its occupants as a result of a collision for which the manufacturer may not be responsible. For the lack of reasonable care in the face of such duty, he may be answerable in a negligence action; and for the sale of a vehicle defective in such respect, he may be answerable for breach of implied warranty.

The testimony offered by plaintiffs herein is disputed in some particulars by defendant, particularly the conclusions of plaintiff's experts. Those arguments, buttressed as they may be by testimony to be offered by defendant, are for the jury on retrial. We find plaintiff's proofs sufficient to go to the jury on the causes of action pleaded.

Reversed and remanded, with costs to plaintiff.

no duty to make an obviously dangerous machine "more safe" by adding a safety device.

[11] National Safety Council Estimates, *Safety, Accidental Death and Death Rate, 1972, 1973,* World Book Encyclopedia, 1974 Ann Supp, p 471.