PEOPLE v LOBSINGER

1. JUDGES—DISQUALIFICATION OF JUDGE—PREJUDICE—COURT RULES.

The court rule governing the disqualification of a judge requires an actual showing of prejudice or bias, and unless the fact of prejudice or bias is established or the necessities of justice to the defendant require it, a change of judge is an unjustifiable wrong to the public (GCR 1963, 405[1]).

2. JUDGES—DISQUALIFICATION OF JUDGE.

Failure of a trial judge to disqualify himself from hearing a defendant's case was error where the judge acknowledged that some degree of animus existed between him and the defendant.

Appeal from Detroit Recorder's Court, Justin C. Ravitz, J. Submitted June 5, 1975, at Detroit. (Docket No. 17026.) Decided September 11, 1975. Leave to appeal denied, 395 Mich 802.

Donald Lobsinger was convicted of assault and battery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Ronald Weitzman,* Assistant Prosecuting Attorney, for the people.

*James E. Wells,* for defendant.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

REFERENCES FOR POINTS IN HEADNOTES
[1] 46 Am Jur 2d, Judges §§ 220, 221.
[2] 46 Am Jur 2d, Judges § 86.

PER CURIAM. Defendant was charged with assault and battery. MCLA 750.81; MSA 28.276. After two judges of the Recorder's Court disqualified themselves, this case was assigned to Judge Ravitz. Defendant, Donald Lobsinger, made a motion to disqualify Judge Ravitz and the judge denied it. The question was brought before another judge in the Recorder's Court and it was again denied. Defendant was convicted by a jury of assault and battery and appeals.

We have here two men with diametrically opposed political views. One is the trial judge and the other the defendant. Prior to the judge's election, the two men had appeared on a radio program and at various political demonstrations and rallies. It is safe to say that neither man has a high opinion of the other. However, since there appears to have been virtually no personal contact between the judge and defendant before the trial, their opinions of one another seem to stem primarily from the image projected by the mass media of two outspoken individuals who find themselves on different sides of most important political questions. Whether this mutual disrespect transcends political disagreement and reaches a point of personal intolerance becomes crucial in the present context.

GCR 1963, 405.1 provides in pertinent part:

"The judge shall be deemed disqualified to hear the action when the judge:

\* \* \*

"(3) is personally biased or prejudiced for or against any party."

The court rule requires an actual showing of prejudice or bias, *Wayne County Prosecutor v Doerfler,* 14 Mich App 428; 165 NW2d 648 (1968), and "[u]nless the fact of prejudice or bias is established

or the necessities of justice to the defendant require it, a change of judge is an unjustifiable wrong to the public", *Kolowich v Ferguson,* 264 Mich 668, 670; 250 NW 875 (1933).

We must look to the record for apparent prejudice on the part of the trial judge. The proper point of inquiry is at the time of trial. It is not enough to say that defendant received an error-free trial and therefore the record fails to demonstrate the trial judge's personal prejudice against defendant.[1] Therefore, we draw our attention to a taped recording of a 1972 radio program,[2] the trial judge's statement in denying defendant's motion for disqualification,[3] portions of the trial judge's

---

[1] We are aware of *Armstrong v Ann Arbor,* 58 Mich App 359; 227 NW2d 343 (1975), where this Court did look to the manner in which the trial was conducted in order to determine whether a new trial should be ordered because of prejudice or bias to either party. However, in that case, an express waiver of disqualification shifted the focal point of the inquiry.

[2] In 1972, on a local radio program, a 3-member panel which included the trial judge and defendant, discussed whether the Detroit Police Department's STRESS unit (Stop The Robberies, and Enjoy Safe Streets) should be abolished. An accurate summation of the extent of the trial judge's participation in that program is provided by the Recorder's Court judge who initially reviewed the trial judge's denial of defendant's motion for disqualification:

"Testimony [has been] taken on the motion and additional evidence received. Specifically, a tape recording of a radio forum in which both Judge Ravitz and Mr. Lobsinger appeared, along with Shelia Murphy. And a transcription of this radio program was received as evidence.

"It had been alleged by Mr. Lobsinger in his affidavit to disqualify Judge Ravitz that Judge Ravitz had, in fact, called him a Nazi during * * * this program. This Court has heard the tapes. And, as a matter of fact, * * * Judge Ravitz did not call Mr. Lobsinger a Nazi. As a matter of fact, there were *no declarations of that nature.* Only questions put purely in question form.

"I believe that the words in question were 'are you a member of a Nazi party?' 'Do you believe in Facism?' 'Do you believe in a police state.'

"And, as a matter of fact, I find, from listening to the tape that Judge Ravitz did not participate very much in the tape. And that those questions were asked of Mr. Lobsinger by Judge Ravitz during this radio program, in my opinion, do not constitute bias, in fact."

[3] "Okay, the Court is prepared to rule. Before doing so, let me say

testimony before the reviewing Recorder's Court judge,[4] and the reviewing judge's characterization of the trial judge's testimony.[5]

this. I took an oath of office and swore to uphold the Constitution and that's what I'm required to do as a judge elected by the members of this community. To sit as a Recorder's Court Judge. It is my obligation sitting as a judge in conducting this courtroom to set aside personal bias wherever possible. And when I don't think it is possible to in fact disqualify myself, and that I wouldn't hesitate to do so on my own motion if and when the time were to arrive when I felt that was necessary.

"In fact in the past I've had conferences with various Prosecuting Attorneys and I've told them of at least one situation in which I know very well that I would not be able to fairly and impartially set [sic] and that they are to watch for it, such a situation. And if one arises the prosecution—the prosecutors who work in this courtroom know that they are to alert me of this situation * * * . While Mr. Lobsinger and I have diametrically opposed views, while we might have some personal degree of animus that certainly wouldn't be fully concealed, it's real. Nonetheless I accept the rule of law that he, like anyone else who comes into this courtroom is presumed to be innocent. He is entitled to a fair and impartial trial. And I have no reservations as to my ability to accord him just that. For these reasons the Court denies the motion to disqualify under Rule 405. There is an abundance of case law that I could cite that shows when by connections—but nonetheless it is not error and it can be appropriate for the trial court to proceed. There have been two judges of this court who have previously disqualified themselves. I'm ready, willing and I think fully able in conformance with law to conduct this case, and to give the defendant and to give the prosecution that which they are entitled to under law."

[4] *Counsel for defendant:* "Based on that information that you have already viewed the case, do you find that you might find antagonism towards the defendant in this case based upon his objections that resulted in the case."

*Judge Ravitz:* "You mean legal objections that you would make?"

*Counsel for defendant:* "No, I'm talking about objections to him personally. Personal objections, your own feelings?"

*Judge Ravitz:* "I think I could set them aside, counsel."

*Counsel for defendant:* "They do exist?"

*Judge Ravitz:* "No question."

*Counsel for defendant:* "And so when you say, 'unequivocally that my views are diametrically opposed to those of Mr. Lobsinger' you mean that * * * "

*Judge Ravitz:* "I believe that Mr. Lobsinger and I, and on probably most important political questions would find ourselves on different sides."

* * *

*Counsel for defendant:* "I see. And what experiences—you mentioned some experiences. What experiences are these based upon?"

We review the record in light of *Wayne County Prosecutor v Doerfler, supra,* authored by Judge

---

*Judge Ravitz:* "They're based on very little. They're based on—and it's really hard to document things. I guess that when persons get some public exposure they all acquire certain attitudes and certain beliefs as to what the individual so exposed thinks or believes in. I couldn't cite anything in particular other than having done a radio show with Mr. Lobsinger. Having seen him on occasion at demonstrations. And his having, in fact, you know, been in my courtroom today, this morning. These sorts of things that I relate to his statements or how it's reported is what led to that general belief on my part, which might, in fact, be incorrect. Certainly I don't always rely on that which is projected by the mass media. He has a certain projection which has given an image to me of him. But I don't know the person, I have never engaged in much conversation with him, and I could be very wrong."

\* \* \*

*Counsel for defendant:* "When you say that 'we' meaning you and Mr. Lobsinger have a certain degree of animus and it needn't be hidden, it is real. Do you mean that you can't hide it?"

*Judge Ravitz:* "I can hide it for purposes of sitting through a trial and participating as a judge in conformance with the laws which I am sworn to and will uphold."

*Counsel for defendant:* "But it is a masking procedure, is it not?"

*Judge Ravitz:* "It's not a question of masking. I don't think the question of animus needs to arise during the trial. What do I think of Donald Lobsinger, not very much, it could be said to be very good, that's for you. There's no sense whatsoever in trying to hide that."

[5] *"Judge Ravitz* \* \* \* testified in substance that admittedly he did not like the defendant Donald Lobsinger. But stated forthright that this would not prevent him from sitting in an impartial manner. And that he would, by no means, exercise any judicial discretion against the defendant on account of this fact.

"None of the exhibits attached to the motion nor the auxiliary testimony offered provide sufficient ground for disqualification. At best, if valid, they would relate to the political beliefs of the trial judge. A fact which cannot be taken into account with propriety, either on the question of the qualification of the judge to sit, or in relation to the charge against the defendant.

"This leads us to the question of the effect of the judge's own admission, in substance, that he did not like the defendant Donald Lobsinger. This must be considered, of course, along with the statement that his feeling toward the defendant would not, in any way, affect his ability to sit and hear the matter impartially. One is readily impressed by the judge's obvious honesty and forthright candor, his frank statement of his feelings toward the defendant, and not so readily be accepted as true, while his statement that he cannot sit impartially must be rejected. Both must be taken with the best of logic and reason. Bias or prejudice which disqualifies a judge has been described as a condition, a state of mind which sways judgment and

(now Justice) FITZGERALD. *Doerfler* involved a complaint seeking an adjudication that certain magazines were obscene and an injunction permanently restraining their possession, distribution or sale. A motion to disqualify the trial judge on the grounds that he was actively engaged in attempting to motivate the community against the sale of obscene literature was filed by defendants. The trial judge denied the motion, as did another circuit judge to whom the motion was assigned.

The trial judge in *Doerfler* had been a former president of the Archdiocesan Council of Catholic Men, an organization that worked on occasion with the National Office for Decent Literature to prevent the distribution of obscene literature to children. He was alleged to have been very active in these groups. *Doerfler* was not concerned with personal bias against any party or attorney but with alleged prejudice against the subject matter at issue in that case. However, its rationale is helpful to the decision in this case:

"A judge is not expected to bring with him to the bench a blank mind and personality, as he becomes, by necessity, a composition of the general experiences of his life, refined and honored by his legal training and legal experience so that the desired judicial temperament will hopefully emerge. To require a blank mind is unreasonable, but to demand an impartial and clear appraisal of each new case is not. A judge may well be subconsciously prejudiced in one way towards the evidence or the parties in a case before him. It is his duty

---

renders the judge unable to exercise his functions impartially in a particular case.

"In the instant case Judge Ravitz has again candidly conceded the well known fact that there are many instances during the course of a trial in which a judge may exercise discretions not amounting to error, which may not result in the greatest benefit to the defendant. However, he denies that he would be inclined to do this."

not to permit these prejudices to override his responsibilities in providing a fair forum for the determination of controversy. This duty should ideally motivate the judge to request reassignment of the case if he is aware of any prejudices which he holds which would interfere with his impartiality. If the judge refuses to do so, and the appellate court finds from the record that the judge was apparently prejudiced, then reversal is often the only remedy." 14 Mich App at 440. (Footnotes omitted.)

The Court in *Doerfler* viewed the trial judge's activities to be "no more than general public statements made with the intent of educating the community", and not an attack on any specific type of publication or definition and application of an obscenity statute. 14 Mich App at 441. The disqualification was found to have been properly denied.

The case at bar, although presenting a question of "personal bias", is analogous in that it requires a determination as to whether personal animosity existed between the trial judge and defendant or whether it was purely a problem of conflicting ideologies. As can be seen by the footnoted portions of the record, in denying the motion for disqualification and in testifying before the reviewing Recorder's Court judge, Judge Ravitz acknowledged that "some personal degree of animus" existed between him and defendant which was "real". Furthermore, although affirming Judge Ravitz' denial of defendant's motion, the reviewing judge characterized Judge Ravitz' testimony as admitting dislike for defendant. Apparently then, a degree of personal bias or prejudice did, in fact, exist.

This is not a situation where a trial judge has stated that he has no bias or prejudice. See, *Kolowich v Ferguson, supra,* 264 Mich at 670. Here,

the trial judge acknowledged "some degree of personal animus" and once that had been recognized, he should have disqualified himself from the case.

Reversed and remanded for a new trial.