## ELSASSER v AMERICAN MOTORS CORPORATION

1. PRODUCTS LIABILITY—AUTOMOBILES—NEGLIGENCE—FORESEEABLE INJURY—REASONABLE CARE—IMPLIED WARRANTY.

    An automobile manufacturer has a duty to so design and manufacture his product as to eliminate any unreasonable risk of foreseeable injury to the occupants of an automobile as a result of a collision; for the lack of reasonable care in the face of such duty, he may be answerable in a negligence action, and for the sale of a vehicle defective in such respect, he may be answerable for breach of implied warranty.

2. PRODUCTS LIABILITY—IMPLIED WARRANTY—PROOF OF DEFECT—INJURY—REASONABLE FITNESS—FORESEEABLE USES—MISUSE OF PRODUCT.

    A product liability suit based upon an implied warranty theory requires proof of a defect in manufacturing or design and injury caused by or resulting from the defect; under the implied warranty theory a defect is established by proof that the product is not reasonably fit for its intended, anticipated or

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 646–649.

63 Am Jur 2d, Products Liability §§ 62, 63.

Manufacturer's or seller's duty as to product design as affecting his liability for product-caused injury. 76 ALR2d 91.

Liability of manufacturer or seller for injury caused by automobile or other vehicle, aircraft, boat, or their parts, suppliers, or equipment. 78 ALR2d 460.

Liability of manufacturer, seller, or distributor of motor vehicle for defect which merely enhances injury from accident otherwise caused. 42 ALR3d 560.

[2] 8 Am Jur 2d, Automobiles and Highway Traffic § 661.

[4] 63 Am Jur 2d, Products Liability §§ 26, 69.

[5] 63 Am Jur 2d, Products Liability § 22.

[6] 63 Am Jur 2d, Products Liability §§ 66, 79.

Admissibility in evidence, on issue of negligence, of codes or standards of safety issued or sponsored by governmental body or by voluntary association. 75 ALR2d 778.

[7] 74 Am Jur 2d, Torts §§ 76, 78.

[8] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26, 29, 31, 32.

[9, 10] 46 Am Jur 2d, Judges §§ 220, 221.

reasonably foreseeable use; misuse of a product may be within the intended or foreseeable use upon which a cause of action for defective design or manufacture may be based.

3. Products Liability—Automobiles—Collisions—Reasonable Fitness.

A manufacturer of automobiles is not required to manufacture a crash proof vehicle, but he must recognize the existence of accidents and build his product so that it is reasonably fit in case of a collision.

4. Products Liability—Foreseeability—Reasonable Preventive Measures—Jury.

The questions of foreseeability of injury and reasonableness of protective and preventive measures in products liability actions are for the trier of fact to decide.

5. Products Liability—Defects—Injury—Proximate Cause.

A plaintiff in a products liability case needs only to establish that a defect was *a* proximate cause of his injury, not that it was *the* proximate cause.

6. Products Liability—Industry Standards—Reasonableness of Standards.

A manufacturer may show compliance with an industry standard to indicate the reasonableness of the manufacture of his product, but the industry standard itself is always open to the question of reasonableness.

7. Damages—Products Liability—Apportionment of Damages—Instructions to Jury.

An instruction to a jury in a products liability action involving enhanced injuries that they must apportion damages between defendants is not necessary where the defendants have previously agreed to an apportionment between themselves.

8. Witnesses—Expert Witnesses—Qualification to Testify—Discretion of Court.

The determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court.

9. Appeal and Error—Judicial Rulings—Prejudice.

Numerous rulings in favor of one party to a legal action do not necessarily indicate a prejudice on the part of the court.

10. Judges—Prejudice or Bias—Burden of Proof.

A party alleging prejudice or bias on the part of a trial judge bears the burden of showing that prejudice or bias.

Appeal from Ingham, Donald L. Reisig, J. Submitted June 16, 1977, at Lansing. (Docket No. 27725.) Decided February 22, 1978.

Complaint by Richard Elsasser and Gayle Elsasser against American Motors Corporation for damages for breach of implied warranty arising from an automobile collision and against Susan K. Leighton for damages for negligence. Defendant Leighton was dismissed from the action as a result of a settlement agreement. Judgment for plaintiffs. Defendant American Motors Corporation moved for judgment notwithstanding the verdict, or in the alternative for a new trial or for remittitur. Motions denied. Defendant American Motors Corporation appeals. Affirmed.

*Sinas, Dramis, Brake, Turner, Boughton, McIntyre and Boughton, P. C.,* for plaintiff.

*Ronald R. Pawlak, P. C.,* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. Freeman,* JJ.

D. R. FREEMAN, J. In this product liability case defendant appeals a jury verdict of $300,000 to plaintiff Gayle Elsasser and $175,000 to plaintiff Richard Elsasser. Following the November 6, 1975 jury verdict, defendant moved for a new trial, a judgment notwithstanding the verdict, and remittitur. These motions were denied in an opinion and order dated February 24, 1976.

On December 11, 1970, plaintiffs were driving on I-94 in their 1971 AMC Gremlin which they had purchased new from an American Motors Corporation (hereinafter AMC), dealer about two months

---

* Circuit judge, sitting on the Court of Appeals by assignment.

before. Due to inclement weather the driving conditions were very poor. A car was blocking one of the lanes. Jerome Burg, a motorist who had previously stopped, was flagging down traffic in the area of the blocked expressway lane. After seeing Burg, Richard Elsasser brought the plaintiffs' car to a halt and joined several other cars in the congestion caused by the blocked lane. Susan Leighton, operating a 1970 Plymouth Duster, approached the scene and saw Burg but did not see the line of stopped cars until a few short moments before she collided with the rear of plaintiffs' stopped vehicle. The parties disagreed as to the speed of the Leighton vehicle at impact, and testimony at trial gave estimates ranging from 20 miles per hour to 55 miles per hour.

The impact from the collision drove plaintiffs' car forward into the car in front of it. The Leighton car struck plaintiffs' car in the rear, to the left of center, and crushed plaintiffs' car approximately 30 inches on the left side. The gas tank of plaintiffs' car ruptured and the floor pan separated from the left side of the automobile. A fire broke out inside and outside of the plaintiffs' car.

Richard Elsasser escaped through a window. Gayle Elsasser, apparently dazed by the collision, was pulled from the burning car by bystanders. Both plaintiffs received severe burns, including burns to their hands and faces. Neither plaintiff was permanently disabled, although both were scarred and suffered severe pain. Plaintiffs' injuries required substantial surgery. Susan Leighton received only a superficial injury to her nose, which struck her steering wheel.

Plaintiffs sued defendant AMC for breach of implied warranty and Susan Leighton for negligence. Plaintiffs alleged four design defects—im-

properly located gasoline tank which was too large for the vehicle, inadequate protection of the gas tank, an inadequate connecting flange on the floor pan and inadequate fire wall protection between the gas tank and passenger compartment—and one workmanship defect—defective welds on the left side of the floor pan. Plaintiffs contended that gasoline from the ruptured tank entered the passenger compartment through the vacancy caused by separation of the floor pan from the side of the Gremlin. According to plaintiffs, the separation was the result of the defective welding.

During the course of the trial, plaintiffs reached a settlement with Susan Leighton in the amount of $75,000. All of the parties involved, including AMC, agreed that the jury would determine the damages necessary to compensate plaintiffs in full. From any such award the trial court would credit AMC with $50,000 against any judgment for Gayle Elsasser, and with $25,000 against any judgment for Richard Elsasser, reflecting the $75,000 settlement with Susan Leighton.

## I

Defendant first contends that there is no duty owed by a manufacturer to build an automobile fit for a collision. Defendant urges us to adopt a rule, expressed in *Evans v General Motors Corp,* 359 F2d 822 (CA 7, 1966), and its progeny, that a manufacturer need only produce a vehicle fit for its intended use, which does not include collisions, despite the foreseeability of such collisions. We think a better rule was set forth in *Larsen v General Motors Corp,* 391 F2d 495 (CA 8, 1968), which was adopted in *Rutherford v Chrysler Motors Corp,* 60 Mich App 392, 400; 231 NW2d 413 (1975), *lv granted,* 394 Mich 823 (1975):

"Agreeing with *Larsen,* we hold that a manufacturer of any automobile has a duty to so design and manufacture his product as to eliminate any unreasonable risk of foreseeable injury to its occupants as a result of a collision for which the manufacturer may not be responsible. For the lack of reasonable care in the face of such duty, he may be answerable in a negligence action; and for the sale of a vehicle defective in such respect, he may be answerable for breach of implied warranty."

*Larsen* dealt with a negligence cause of action. Its reasoning, however, lends itself equally well to an implied warranty suit, as noted by the *Rutherford* Court. Adoption of the *Larsen* reasoning was not the dramatic judicial step that defendant indicates it was. *Rutherford* was consistent with the trend of prior Michigan cases holding that misuse of a product may be within the intended or foreseeable use giving rise to a cause of action for defective design or manufacturing. *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973), *Byrnes v Economic Machinery Co,* 41 Mich App 192; 200 NW2d 104 (1972). Under *Larsen* and *Rutherford,* a manufacturer must recognize the existence of accidents. A manufacturer is not required to manufacture a "crash proof" automobile, but rather one that is reasonably fit in case of a collision.

A product liability suit based on an implied warranty theory requires proof of a defect in manufacturing or design and injury caused by or resulting from the defect. *Piercefield v Remington Arms Co,* 375 Mich 85, 96; 133 NW2d 129 (1965). Under the implied warranty theory a defect is established by proof that the product is not reasonably fit for its intended, anticipated or reasonably foreseeable use. *Dooms v Stewart Bolling & Co,* 68

Mich App 5, 14; 241 NW2d 738 (1976), *lv den* 397 Mich 862 (1976).

In the instant case plaintiffs alleged design defects and a manufacturing defect. These alleged defects arose from a failure on the part of defendant to eliminate unreasonable risks of injury in light of the intended and foreseeable use of the product. This blurring of the distinction between the concepts of implied warranty and negligence is not uncommon in product liability cases. See, for example, *Dooms v Stewart Bolling & Co, supra, Smith v E R Squibb & Sons, Inc,* 69 Mich App 375; 245 NW2d 52 (1976), *lv den,* 399 Mich 804 (1977), and *Rutherford v Chrysler Motors Corp, supra.* Defendant had a duty to produce a reasonably fit product under both negligence and implied warranty concepts.

## II

Defendant's second contention is that the evidence presented by plaintiffs was insufficient to show a breach of an implied warranty or a legal duty.

Proofs were presented by plaintiffs to show that faulty welding and a flange of inadequate design permitted gasoline to enter the passenger compartment and cause plaintiffs' injuries. Plaintiffs showed that defendant was aware or should have been aware of the safety problems and the suggested remedies. Defendant produced countervailing testimony and evidence which, among other things, showed that some of plaintiffs' arguments (*e.g.,* the use of a fire wall) were impractical. Defendant also contends that plaintiffs failed to show the prevailing "state of the art".

The questions of foreseeability of the injury and

reasonableness of the protective and preventive measures taken are questions for the jury. *Casey v Gifford Wood Co,* 61 Mich App 208, 217–218; 232 NW2d 360 (1975), *lv den,* 395 Mich 810 (1975). We find that plaintiffs presented the issues of defect and injury therefrom in a sufficient manner for the questions of unreasonableness of the defect and foreseeability of the risk to go to the jury. Plaintiffs presented a prima facie case, *Smith v E R Squibb & Sons, Inc, supra* at 380, absent any inquiry concerning proximate cause. Since plaintiffs needed to establish only that the defect was *a* proximate cause and not *the* proximate cause, their proofs were sufficient to go to the jury. *Dooms v Stewart Bolling & Co, supra,* at 17–18.

A comment should be made concerning the "state of the art" or industry custom as evidence. It is hornbook law that a manufacturer may show compliance with industry standards to indicate reasonableness, but the industry standard itself is always open to the question of reasonableness. Prosser, Torts (4th Ed), § 33, 96, pp 166–168, 645. Reasonableness is ultimately a question for the jury.

### III

Defendant next raises several alleged procedural errors concerning, for the most part, an instruction to the jury and expert testimony adduced by plaintiffs.

In a case such as this dealing with "enhanced injuries", or a "secondary collision", damages are usually apportioned between the defendant manufacturer and the negligent defendant who precipitated the initial collision. Defendant's contention that an apportionment instruction should have been given would usually be correct. In this case,

however, as part of the settlement with Susan Leighton, AMC agreed in open court that the jury would only make a determination as to total damages and that the trial court would then make set deductions from any award against AMC. It was not error to decline to instruct on apportionment.

The determination of whether an expert witness is qualified to testify rests within the sound discretion of the trial court. *National Pharmaceutical Services, Inc, v Harrison Community Hospital,* 67 Mich App 286, 293; 241 NW2d 76 (1976), *lv den* 397 Mich 824 (1976), *Coger v Mackinaw Products Co, supra,* at 123. There was no abuse of discretion here, where plaintiffs' expert was an engineer with extensive background in automobile collisions and had published articles which defendant's employees admittedly read. The expert's testimony as to the speed of the Leighton vehicle was not precluded due to eyewitness lay testimony on the same point. Under the facts of this case the lay testimony was subject to considerable doubt in light of the poor weather conditions and sudden nature of the collision. *People v Zimmerman,* 385 Mich 417; 189 NW2d 259 (1971), does not preclude such testimony.

## IV

Defendant's final issue raises questions concerning the fairness of the trial in light of the trial court's alleged bias in favor of plaintiffs.

This was a long and complex case which required numerous rulings on the part of the trial court. Even if it were true that the rulings were for the most part favorable to plaintiffs, that would not necessarily indicate reversible prejudice. *Mahlen Land Corp v Kurtz,* 355 Mich 340, 350–351; 94 NW2d 888 (1959). We note that many

rulings were actually in favor of defendant. As the prior discussion indicated, we found no error in ruling made by the trial court.

At the outset of the case, defendant moved to disqualify the trial judge under GCR 1963, 405. The major ground was alleged bias due to the fact that Gayle Elsasser was employed by the Ingham County Friend of the Court. Pursuant to GCR 1963, 405.2, another judge held a hearing and ruled that disqualification was unnecessary. We find no error in this ruling. There was no relationship whatsoever between the trial judge and Gayle Elsasser, the two had never even met, and there was no indication of bias on the part of the trial judge.

More significant in this case is the fact that 48 days after rendering a decision on defendant's post-trial motions, the trial judge left the bench and became a partner in the law firm which represented plaintiffs throughout the proceedings of this case. While this action took place 48 days after the proceedings ended at the circuit court level, it occurred 4-1/2 years after plaintiffs' initial complaint was filed and six months after the trial itself began.

It is not enough to say that the defendant received an error-free trial. *People v Lobsinger,* 64 Mich App 284–286; 235 NW2d 761 (1975). However, where a party relies on alleged prejudice or bias of the trial judge, that prejudice or bias must be shown. *People v Rayford Johnson,* 68 Mich App 54, 58; 242 NW2d 35 (1976), *reversed on other grounds,* 397 Mich 686; 246 NW2d 836 (1976), *Meshriy v Sun Oil Co,* 67 Mich App 709, 712; 242 NW2d 497 (1976), *Wayne County Prosecutor v Doerfler,* 14 Mich App 428, 441; 165 NW2d 648 (1968). In the case at bar, defendant did not show

any actual bias or prejudice whatsoever, and our review of the record reveals none. In light of this lack of prejudice we cannot say that it was reversible error, if error at all, for the trial judge to preside over this jury trial. Defendant received a fair trial in all respects.

The employment agreement between the trial judge and the law firm expressly excluded the trial judge from any monetary benefits that might result from the instant case. We find that the instant circumstances did not create a pecuniary interest in the trial judge. Nor do we find that the trial judge was consulted or employed as counsel in regards to this case within the meaning of GCR 1963, 405.1(5).

Affirmed, costs to plaintiff.