## CLARK v SEAGRAVE FIRE APPARATUS, INC

Docket No. 88970. Submitted January 7, 1988, at Detroit. Decided July 19, 1988.

Patricia Ann Clark, administratrix of the estate of Michael L. Johnson, deceased, brought an action against Seagrave Fire Apparatus, Inc., FWD Corporation and Seagrave Corporation in the Wayne Circuit Court, alleging negligence in the design, manufacture and sale of a tiller cab and breach of implied warranties of merchantability and fitness for its intended use resulting in decedent's death. The jury found that defendants were not negligent but that they were liable for breach of an implied warranty of fitness. The court, Arthur M. Bowman, J., granted judgment for plaintiff and denied defendants' motion for a judgment notwithstanding the verdict, a directed verdict or a new trial. Defendants appealed.

The Court of Appeals *held:*

1. Under the facts of this case it was not inconsistent with substantial justice for the jury to find that defendants were not negligent but to hold them liable under a breach of implied warranty theory.

2. Defendants were not entitled to a directed verdict as plaintiff had made out a prima facie case.

3. The trial court did not abuse its discretion in excluding certain expert testimony as it would have necessitated delving into a potentially confusing collateral matter.

4. The buyer's specification exception to the products liability rule did not apply to the facts of this case.

5. The instructions, read as a whole, were adequate.

Affirmed.

MacKenzie, J., dissented. She believed that the verdict was irreconcilably inconsistent and would grant a new trial.

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 2-7.
Am Jur 2d, Products Liability §§ 284 *et seq.,* 470 *et seq.*
Am Jur 2d, Trial §§ 469 *et seq.*
See the Index to Annotations under Implied Warranties; Products Liability.

1. NEGLIGENCE — IMPLIED WARRANTY — INCONSISTENT VERDICTS.

It is not inconsistent with substantial justice to find on appropriate facts that a defendant product manufacturer and seller was not negligent but that he did breach an implied warranty of fitness.

2. MOTIONS AND ORDERS — DIRECTED VERDICT.

In deciding whether to grant a motion for a directed verdict, the trial judge must accord to the nonmoving party the benefit of viewing the testimony and all the legitimate inferences that may be drawn from it in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

3. EVIDENCE — EXPERT TESTIMONY — RULES OF EVIDENCE.

A trial court has discretion to exclude expert testimony where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

4. PRODUCTS LIABILITY — MANUFACTURER'S LIABILITY — PURCHASER'S SPECIFICATIONS.

A manufacturer may not be held liable for a plaintiff's injuries under a products liability theory where the allegedly defective product was manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed.

*Robert J. Dinges & Associates* (by *Robert J. Dinges*), for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *John F. Milan*), for defendants.

Before: MacKENZIE, P.J., and KELLY and L. P. BORRELLO,* JJ.

KELLY, J. On May 12, 1983, a jury, after finding decedent fifty percent negligent, awarded plaintiff $150,000 in this design defect products liability case. A judgment along with $58,878.96 in interest was entered on July 22, 1983. On November 4,

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

1985, the trial court denied defendants' renewed motion for judgment notwithstanding the verdict or in the alternative for a new trial and a motion for a directed verdict. Defendants appeal this decision as of right. We affirm.

On the morning of December 12, 1977, when Detroit Fire Fighter Michael L. Johnson was killed, the fire truck he was riding in departed an old Detroit Fire Department firehouse located on Milwaukee in the City of Detroit. Johnson was assigned to operate the tiller cab of the three-axle firefighting vehicle. The tiller cab was a raised enclosure on the back of the aerial ladder fire truck from which Johnson steered the back end of the vehicle around corners. On the day of the incident, as this fire truck left the firehouse, Johnson's head was caught in a pinchpoint between an overhead ceiling beam and the back end of the tiller cab roof. The impact broke Johnson's neck, causing his instantaneous death.

What apparently happened was that Johnson, after giving a two-beep signal to indicate that he was ready to move, stood up. The tiller cab had a sliding canopy roof. The top of the canopy barely cleared a ceiling beam in the firehouse. Apparently the canopy roof was open and Johnson stood up while attempting to put his coat on. At the same time the vehicle, after an initial delay, began to move forward. Once the vehicle left the firehouse, a firefighter noticed that Johnson was slumped over the tiller steering wheel. The vehicle stopped and the tiller cab was opened. There was blood all over the cab and Johnson had a long cut on the back of his neck from ear to ear. The forward edge of the sliding canopy roof was damaged. At the firehouse, the ceiling beam under which the cab passed had a large indentation apparently caused by Johnson's helmet.

Plaintiff's theory was that the tiller cab was negligently designed, constructed, manufactured and sold. Plaintiff argued that the product was defective since it was not safe for intended uses and not of merchantable quality. Plaintiff's counsel argued to the jury that a proximate cause of Johnson's death was the defectively designed tiller cab. Plaintiff's counsel argued that the design of the tiller cab was too high, the space inside the cab too small, the communication/signal system inadequate, and the sliding top unreasonably dangerous. Counsel also argued that Seagrave was negligent in not supplying warnings for these hidden dangers.

After the trial court instructed the jury, a verdict form was submitted to them for use in their deliberations. Defendants drafted the verdict form. To the first question on the verdict form—were defendants negligent?—the jury answered no. To the second question on the verdict form—did defendants breach their implied warranty of fitness? —the jury replied yes. The jury also replied affirmatively that this breach was a proximate cause of Johnson's death. Subsequently the jury also found Johnson comparatively negligent and reduced the award accordingly.

The first issue raised by defendants on appeal concerns the jury's verdict. Defendants contend the jury's findings that defendants were not negligent but that they were liable for breach of implied warranty due to negligent design were inconsistent. For this reason, defendants argue that the jury's verdict must be set aside and a new trial granted as a matter of law.

In *Harrington v Velat*, 395 Mich 359, 360; 235 NW2d 357 (1975), the Supreme Court held:

[T]he general rule is that where a verdict in a

civil case is inconsistent and contradictory, it will be set aside and a new trial granted.

"Ordinarily, a verdict may and should be set aside and a new trial granted where it is self-contradictory, inconsistent, or incongruous, and such relief should, as a rule, be granted where more than one verdict are [*sic*] returned in the same action and they are inconsistent and irreconcilable." 66 CJS, New Trial, § 66, pp 197-198.

Relying on *Prentis v Yale Manufacturing Co,* 421 Mich 670, 692; 365 NW2d 176 (1984), defendants argue that, when an engineering design defect is alleged (as here), a claim of breach of implied warranty and a claim of negligence involve identical evidence and proof of the same elements. Therefore, it was inconsistent for the jury on the one hand to find defendants not negligent while on the other hand find that defendants had breached their implied warranty of fitness.

Similarly, defendants rely on *Smith v E R Squibb & Sons, Inc,* 405 Mich 79; 273 NW2d 476 (1979), for the proposition that negligence and breach of implied warranty claims based on failure to warn or inadequacy of warnings involve proof of the same elements. Therefore, defendants again argue that it was inconsistent for the jury to find that defendants were not negligent while at the same time finding that defendants had breached their implied warranty of fitness.

However, *Prentis* and *Smith* are both procedurally distinguishable from the present situation. In both those cases the trial courts had refused to instruct the juries on breach of implied warranty. The issue on appeal in both cases was whether the failure to give that instruction was error. In *Prentis* the Supreme Court noted that breach of an implied warranty of fitness in a design defect case was essentially a matter of negligence, *Prentis,*

*supra* at 691-692, the focus being whether the manufacturer used reasonable care and provided reasonable safety. In *Smith* the Supreme Court observed that determination of whether a product defect exists because of inadequate warnings requires use of the same standard used for determining negligence. *Smith, supra* at 90. Both Courts then concluded that instructing the jury on breach of implied warranty would have been "repetitive and unnecessary and could have misled the jury." *Prentis, supra* at 691. See also *Smith, supra* at 91.

While the issue in *Prentis* and *Smith* concerned appropriate jury instruction, the issue here is whether the verdict reached is inconsistent. A case more analogous to the issue presented here is *Granger v Fruehauf Corp,* 429 Mich 1; 412 NW2d 199 (1987). In *Granger,* plaintiff brought a products liability action claiming injuries due to a defective design in a trailer manufactured by defendant. Plaintiff claimed negligence and breach of implied warranty of fitness. The jury verdict was for defendant on the breach of implied warranty theory, but for plaintiff on the negligence theory. Defendant in *Granger* argued the verdict of the jury was inconsistent. Relying on *Prentis,* this Court agreed. *Granger v Freuhauf Corp,* 147 Mich App 190; 383 NW2d 162 (1985), rev'd 429 Mich 1 (1987). The Supreme Court did not.

Here, as in *Granger,* the jury was given the standard jury instructions for negligent design cases, SJI2d 25.32 and the standard jury instruction on implied warranty, SJI2d 25.22. At the time of trial in this case, and at the time of trial in *Granger,* these were the traditional jury instructions concerning negligent design and implied warranty and were then recognized as applicable. *Granger,* 147 Mich App 197. And in *Granger,* like here, there was no objection to these instructions.

In reversing this Court, the Supreme Court in *Granger* held that, regardless of *Prentis'* rejection of SJI2d 25.22 in this situation, since the case was tried prior to the release of the opinion in *Prentis,* there was no objection to the giving of SJI2d 25.22, and failure to vacate the verdict would not be inconsistent with substantial justice, on the facts presented no new trial was in order.

> [I]t is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside, see, e.g., *Izzo v Weiss,* 270 Mich 372, 375; 259 NW 295 (1935), quoting from *Foster v Gaffield,* 34 Mich 356, 357 (1876), and *Gallick v Baltimore & O R Co,* 372 US 108, 119; 83 S Ct 659; 9 L Ed 2d 618 (1963). [*Granger,* 429 Mich 9.]

Because defendants did not object to the trial court's giving both the negligent design and implied warranty instructions, since this case was also tried prior to the decision in *Prentis,* and since defendants prepared the verdict form, we find that failure to vacate the verdict would not be inconsistent with substantial justice. Since a defendant can be negligent but not liable for implied warranty in a design defect case (see *Granger*), it is not inconsistent with substantial justice, on the facts presented here, to find that defendants were not negligent but that defendants did breach their implied warranty of fitness.

The very essence of a jury's function is to select from contradictory evidence with "conflicting inferences and conclusions that which it considers most reasonable." *Gallick, supra* at 115. It is axiomatic that this Court will not look behind the deliberations that lead to a jury's decision.

Next, defendants argue that plaintiff failed to

establish a prima facie case. Therefore, defendants contend, the trial court erred in denying their motion for a directed verdict, judgment notwithstanding the verdict or new trial.

In deciding whether or not to grant a motion for a directed verdict, or judgment notwithstanding the verdict, the evidence and all legitimate inferences that may be drawn from it must be viewed in a light most favorable to the nonmoving party; if the evidence viewed in this manner establishes a prima facie case then the motion for directed verdict should be denied. *Beard v Detroit,* 158 Mich App 441; 404 NW2d 770 (1987), lv den 428 Mich 901 (1987). In deciding the motion for a new trial the standard for review is whether the jury's verdict was against the great weight of the evidence. *Id.* at 452.

Defendants argue that it was not foreseeable, as a matter of law, that the Detroit Fire Department would house the vehicle in question here where there was insufficient clearance. Similarly, defendants argue that, as a matter of law, it was not foreseeable that Johnson would violate his duty, training and standard operating procedure by dressing in the open tiller cab.

> It is well established that placing a product on the market creates the requisite relationship between a manufacturer, wholesaler and retailer and persons affected by use of the product giving rise to a legal obligation or duty to the persons so affected. A manufacturer owes the consumer an obligation to avoid negligent conduct. The obligation extends to persons within the foreseeable scope of the risk. [*Moning v Alfono,* 400 Mich 425, 439; 254 NW2d 759 (1977).]

In the instant case defendants had sold firefighting apparatus to the Detroit Fire Department for

decades. All prospective bidders on fire trucks were to inspect old fire trucks prior to bidding on new ones in order to determine their design, location and appropriate method of mounting equipment. Defendants were also aware that the Detroit Fire Department initially requested bids on a truck with a lower tiller cab height. Defendants knew or should have known that the City of Detroit had firehouses that were old and designed for equipment from a by-gone era.

Likewise, it was not unforeseeable as a matter of law that Johnson would disregard his training and standard operating procedures. There was evidence to indicate that it was common practice for firefighters to dress while on the truck.

Furthermore, plaintiff presented expert testimony that the design of the tiller cab was unreasonably dangerous because it failed to safeguard the operator from foreseeable hazards in the normal course of the operator's work. There was testimony to the effect that a reasonably prudent designer could foresee the canopy design presented a hazard of collision or contact because of the cab's height. Because the interior of the cab was shorter than most people, the design created a shear point because of the sliding canopy. There was also expert testimony that the signaling system was a proximate cause of this accident and that a reasonably prudent alternate design would have been a simple interlock system connecting the seat belt or canopy to a signaling device.

A prima facie case was established. The trial court did not abuse its discretion in denying defendants' motion for a directed verdict or in denying the motion for a new trial. There were fact questions presented that were for the jury to decide making judgment notwithstanding the verdict also improper.

Next, defendants argue that the trial court disallowed expert testimony for improper reasons. At trial Robert Foster, the MIOSHA inspector who investigated the accident, was called as a witness. However, at the time of the accident Foster was a trainee working with a senior inspector. Defendants sought to introduce Foster's opinion as an expert. The trial court would not allow defendants to question Foster about his opinion, limiting his testimony to his observations.

A trial court may in its discretion exclude expert testimony where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Gibson v Group Ins Co of Michigan,* 142 Mich App 271, 277; 369 NW2d 484 (1985), lv den 424 Mich 851 (1985).

Defendants were attempting to elicit Foster's opinion about whether there were any safety violations. In excluding testimony which would have necessitated delving into a potentially confusing collateral matter, the trial court did not abuse its discretion. Furthermore, evidence of MIOSHA citations issued to a nonparty employer are not admissible as substantive evidence in a wrongful death action against the manufacturer where the violations are not the gravamen of the claim. *Swartz v Dow Chemical Co,* 414 Mich 433, 445; 326 NW2d 804 (1982).

Defendants next argue that they are not liable to plaintiff as a matter of law since the vehicle was manufactured in accordance with Detroit Fire Department specifications. There is an exception to the products liability rule apparently now relied on by defendant where a manufacturer fabricates a product in accordance with plans and specifications of the buyer, except where the plans are obviously dangerous and should not reasonably be

followed. *Huff v Ford Motor Co,* 127 Mich App 287, 294-295; 338 NW2d 387 (1983).

However, that exception is not applicable here. The Detroit Fire Department did not specify that defendants use only a sliding canopy roof. Its only specification in this matter was that the tiller seat be fully enclosed. This claim is without merit.

Finally, defendants argue that the trial court gave erroneous jury instructions over objection and denied requested applicable supplemental instructions. However, we find no error requiring reversal in the trial court's jury instructions. The trial court did not abuse its discretion, as defendants contend, by giving SJI2d 12.02 (excused violation of a statute). This instruction was qualified when the court instructed that the jury must find Johnson used ordinary care. When the instructions are read as a whole we find no abuse of discretion by including this instruction.

The trial court likewise did not abuse its discretion by not giving SJI2d 12.01 (violation of a statute), and SJI2d 12.06 (violation of administrative rules and regulations), which defendant requested. Read as a whole the jury instructions made a general reference to violations of such provisions. We find no abuse.

Next defendants argue the trial court improperly denied various other requested supplemental instructions. Since defendants have not argued on appeal why error requiring reversal resulted from any omissions of these instructions, defendants have failed to preserve this issue for appeal. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959).

Finally defendants argue that the trial court erred in instructing the jury on plaintiff's duty to warn theory. However, defendants did not object to the instruction at trial. Defendants cannot now

assign as error the giving of this instruction. MCR 2.516(1); *Temborious v Slatkin,* 157 Mich App 587, 602; 403 NW2d 821 (1986). Because the jury found that defendants were not negligent, no miscarriage of justice can be claimed on this basis.

Affirmed.

L. P. Borrello, J., concurred.

MacKenzie, P.J. *(dissenting).* In my view, a new trial is required in this case because the jury's two verdicts were irreconcilably inconsistent.

Defendants contend that the verdict was inconsistent because the jury cannot consistently find defendants not negligent yet liable for breach of implied warranty in a design defect products liability case. Negligence and breach of implied warranty are separate and distinct theories of recovery in products liability. *Smith v E R Squibb & Sons, Inc,* 405 Mich 79, 89; 273 NW2d 476 (1979). As our Supreme Court stated in *Prentis v Yale Manufacturing Co,* 421 Mich 670, 692; 365 NW2d 176 (1984):

> We do not dispute the generally recognized distinction between the elements of negligence and breach of warranty. We recognize that the negligence theory generally focuses on the defendant's conduct, requiring a showing that it was unreasonable, while warranty generally focuses upon the fitness of the product, irrespective of the defendant's conduct.

However, in a products liability action based on negligent design, "breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements." *Prentis, supra,* p 692, quoting *Squibb, supra,* p 88. The *Prentis* Court explained:

A manufacturer has a duty to design its product so as to eliminate any unreasonable risk of foreseeable injury. *Owens v Allis-Chalmers Corp,* 414 Mich 413, 425; 326 NW2d 372 (1982). For the lack of reasonable care in the face of such duty, the manufacturer may be answerable in a negligence action. *Elsasser v American Motors Corp,* 81 Mich App 379, 384; 265 NW2d 339 (1978). When proceeding under a theory of implied warranty, a design defect is established by proof that the product is not reasonably safe for the uses intended, anticipated, or reasonably foreseeable. *Dooms v Stewart Bolling & Co,* 68 Mich App 5, 14; 241 NW2d 738 (1976), lv den 397 Mich 862 (1976). For the sale of a product defective in such respect, the seller may be answerable for breach of an implied warranty. *Elsasser, supra. Thus, when the issue is liability of a manufacturer who was also the seller, it is inconceivable that a jury could determine that the manufacturer had not breached its duty of reasonable care and at the same time find that the product was not reasonably safe for its reasonably foreseeable uses.* The question in either case turns on reasonable care and reasonable safety, and as pointed out by Dean Prosser, the liability of the manufacturer rests "upon a departure from proper standards of care so that the tort is essentially a matter of negligence." [Quoting Prosser, Torts (4th ed), § 96, p 644. Emphasis added. 421 Mich 692-693.]

In *Granger v Fruehauf Corp,* 429 Mich 1; 412 NW2d 199 (1987), relied on by the majority, the defendant sold to the plaintiff's employer "as is" a used trailer which it had manufactured. The plaintiff was injured while climbing the trailer, which lacked a ladder, during unloading. He brought suit against the defendant manufacturer/seller alleging negligent design and breach of implied warranty. The jury was instructed on both theories and found that the defendant was liable for negligent design but not for breach of implied war-

ranty. Noting that "[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent," 429 Mich 7, the Supreme Court in *Granger* found no reason to set aside the verdict on inconsistency grounds because there was such a logical explanation: "[t]he jury . . . could have found as to the intervening sale that the 'as is' disclaimer negated any claim for breach of warranty, but that the defendant was negligent in the original design of the trailer." *Id.*

In this case, unlike in *Granger,* the jury found no negligent design, but grounded liability on breach of implied warranty. This distinction has considerable significance. The *Granger* Court stated:

> In *Prentis,* we noted that because breach of an implied warranty of fitness in a design defect case is essentially a matter of negligence, the focus is on whether the manufacturer exercised reasonable care and reasonable safety. We observed that a trial court instruction on breach of warranty as well as on negligent design "would have been repetitive and unnecessary and could have misled the jury into believing that plaintiff could recover on the warranty count even if it found there was no 'defect' in the design of the product." *Id.,* 691-692. In the instant case, however, there is no such concern because the jury found a "defect," i.e., it found "negligence." [429 Mich 7.]

In the instant case, the converse is true: the jury found no "negligence," but reached the "inconceivable" determination, *Prentis, supra,* p 693, that the trailer was defective. Such divergent findings were, of course, the precise concern of the *Prentis* Court.

In light of *Prentis,* and in the absence of any

particular circumstances analogous to the *Granger* "as is" clause which would negate plaintiff's negligence claim, I can discern no logical explanation for the jury's findings. Accordingly, I would vacate the verdict and remand for new trial.