BEARD v CITY OF DETROIT

Docket No. 85506. Submitted November 5, 1986, at Detroit. Decided
    March 3, 1987. Leave to appeal denied, 428 Mich —.

Lyle O. Beard and Sandra Beard brought an action in the Wayne
    Circuit Court against the City of Detroit, alleging that Mr.
    Beard suffered injuries constituting serious impairment of body
    function as a result of defendant's negligence relating to an
    accident involving plaintiffs' automobile and a Detroit Depart-
    ment of Transportation bus. The trial court, Roland L. Olzark,
    J., entered a judgment on a jury verdict of no cause of action.
    Plaintiffs appealed, alleging error in the trial court's denial of
    their motion for a directed verdict on the question of serious
    impairment of body function, motion for judgment notwith-
    standing the verdict, or motion for a new trial. Plaintiffs also
    claimed error in the trial court's refusal to give a supplemental
    nonstandard jury instruction which they had requested.

    The Court of Appeals *held:*

    1. Following the Supreme Court's decision in *DiFranco v
    Pickard,* 427 Mich 32 (1986), the question whether a plaintiff
    suffered a serious impairment of body function, so as to satisfy
    the threshold requirement for recovery for noneconomic loss
    under the no-fault act, must be submitted to the trier of fact, in
    this case the jury, whenever the evidence would cause reason-
    able minds to differ as to the answer, even where there is no
    material factual dispute as to the nature and extent of the
    plaintiff's injuries. In this case, a material factual dispute
    existed as to whether the physical and mental injuries Mr.
    Beard had complained of following the accident were serious
    and whether they were manifestations of a traumatically in-
    duced closed-head injury or were, instead, indicative of a preex-
    istent personality disorder. The trial court therefore did not err

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-368.
Am Jur 2d, Judgment §§ 106-131.
Am Jur 2d, Trial §§ 469 *et seq.*
What constitutes sufficiently serious personal injury, disability,
    impairment, or the like to justify recovery of damages outside of
    no-fault automobile insurance coverage. 34 ALR4th 767.

in refusing to direct a verdict in favor of either plaintiffs or defendant on the issue of serious impairment of body function.

2. Under the disputed facts of this case, the jury's verdict was not against the overwhelming weight of the evidence presented and the trial court did not err in denying plaintiffs' motion for judgment notwithstanding the verdict or motion for a new trial.

3. The nonstandard jury instruction requested by plaintiffs and rejected by the trial court was not an accurate statement of the law regarding damages for loss of earning capacity in an action for noneconomic loss under the no-fault act. The trial court properly rejected the instruction.

Affirmed.

1. Insurance — No-Fault — Noneconomic Loss — Serious Impairment of Body Function.

The question whether a plaintiff suffered a serious impairment of body function must be submitted to the jury whenever the evidence would cause reasonable minds to differ as to the answer, even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. Insurance — No-Fault — Noneconomic Loss — Serious Impairment of Body Function.

In an action in which the plaintiff claims serious impairment of body function resulting from a motor-vehicle accident, a trial court, in deciding motions for, and reviewing orders granting or denying, summary disposition, directed verdict, and judgment notwithstanding the verdict, must view the evidence in the light most favorable to the nonmoving party and determine whether a material factual dispute exists as to the nature and extent of the plaintiff's injuries, and whether reasonable minds could differ regarding whether the plaintiff had sustained a serious impairment of body function; where the threshold issue was properly submitted to the trier of fact, its findings generally should not be disturbed (MCL 500.3135; MSA 24.13135).

3. Trial — Directed Verdict — Question of Fact.

The jury, not the trial judge, is the trier of fact, and whenever a fact question exists upon which reasonable persons may differ, the trial judge may not direct a verdict.

4. Trial — Directed Verdict — Evidence — Prima Facie Case.

In deciding whether to grant a motion for a directed verdict, the trial judge must accord to the nonmoving party the benefit of viewing the testimony and all the legitimate inferences that

may be drawn from it in a light most favorable to the nonmoving party; if the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

5. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — EVIDENCE.

The grant of a party's motion for judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party; in reaching a decision, the trial court must view the evidence in the light most favorable to the nonmoving party and give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence; if, after viewing the evidence in this manner, reasonable men could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.

6. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

The Court of Appeals will not reverse a trial court's decision to grant or deny a motion for new trial unless the trial court abused its discretion by doing so.

*Lakin, Worsham & Victor, P.C.* (by *Larry A. Smith*), for plaintiffs.

*Brenda M. Miller,* Assistant Corporation Counsel, for defendant.

Before: HOOD, P.J., and T. M. BURNS and J. X. THEILER,* JJ.

PER CURIAM. Plaintiffs appeal as of right following a jury verdict in favor of defendant in a suit brought under the no-fault act, MCL 500.3135(1); MSA 24.13135(1). The suit alleged that Lyle O. Beard suffered serious impairment of body function following a 1980 collision between plaintiff's[1] vehicle and a City of Detroit bus. The central issues on appeal are whether plaintiff suffered a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "Plaintiff" as used in the singular throughout this opinion refers to Lyle O. Beard.

serious impairment of body function and whether his alleged injuries were proximately related to the accident. The appeal asserts that the trial court erred in failing to direct a verdict in favor of plaintiff on the serious impairment question and that, following the jury verdict, the trial court should have granted plaintiff's motion for judgment notwithstanding the verdict or new trial because the verdict was against the great weight of the evidence. Plaintiffs also contend that the trial court erred so as to require reversal in refusing to give requested supplemental jury instructions. For the reasons that follow, we affirm the trial court.

The accident occurred when plaintiff slowed his automobile to three to four miles per hour to allow an animal to cross the street. As he began to accelerate the vehicle again, he was struck in the rear by the bus. The impact pushed his vehicle forward about 180 feet. Plaintiff remembered being thrown backward and maybe also hitting his head on the steering wheel or dashboard. On the basis of the proofs, at the close of the evidence, the trial court granted plaintiff's motion for a directed verdict of negligence against defendant.

When the ambulance arrived, plaintiff declined to go to the hospital. An investigating officer stated that plaintiff complained of injury but exhibited no signs of injury or shock. Plaintiff drove his vehicle home and then went with his wife to a hospital emergency room where he was given flax oil, a muscle relaxant, and a prescription for Tylenol No. 3. Although he was diagnosed as having suffered a cervical sprain, x-rays of his skull and spine revealed no fracture or abnormality, and he returned home.

Following the weekend, plaintiff went to a neurologist for treatment of dizziness and back pain.

Plaintiff told the neurologist that just about everything hurt: his lower back, hips, right arm, shoulder, neck, the area between his shoulder blade and neck, and that he had a headache which had persisted all weekend. The neurologist prescribed physical therapy three times a week for about six months. Summarizing the neurologist's deposition, plaintiff's clinical symptoms during this time were subjective complaints. The only objective finding that supported plaintiff's complaints was described as one EMG, an electrical shock to the nerves to check for nerve stimulation. However an EMG done two months later did not reveal any problems.

The neurologist saw overall gradual improvement during the period and thought plaintiff could probably return to his work as a truck driver, but plaintiff indicated that he was having too much of a problem to do so. The neurologist also noted during several visits that plaintiff was very depressed and that his depression probably complicated his physical complaints. The neurologist agreed that, as time went on, plaintiff's depression became chronic. As to whether plaintiff's depression could be secondary to either postconcussion syndrome or a closed-head injury, the neurologist opined:

> I think that his symptoms of concussion or post-concussion syndrome tend to ameliorate and I saw him later on. I would think that if we wanted to put it on a physical basis, the depression due to his other complaints, would be more likely. In other words, you don't have to have a head injury to be depressed, of a physical problem is what I am saying.

At about the same time, a chiropractor who performed a palpatory examination on plaintiff noted muscle spasms and extreme sensitivity in

the cervical spine. The chiropractor's prognosis was that no permanent disability was expected. He thought plaintiff could return to work on April 1, 1981, with moderate lifting restrictions.

A physician who saw plaintiff for pain management in 1983 believed that plaintiff would not need any restrictions in terms of physical activities. Beginning in July, 1983, plaintiff also wore an intraoral appliance at the direction of a dentist. This constituted treatment for temporomandibular joint dysfunction, which can cause severe head and neck pain. Plaintiff's face pain had resolved itself by December, 1984.

On March 20, 1981, approximately seven months after the accident, plaintiff first visited a psychiatrist, Dr. Charles W. Fountain. Prior to this visit, plaintiff had been receiving no-fault benefits for his medical expenses and work-loss benefits from his insurance carrier. When the no-fault insurer learned that plaintiff had not been employed for eight months prior to the accident, and had been employed basically part-time prior to that, the insurer notified plaintiff, in a letter dated March 18, 1981, that it was suspending his work-loss benefits until he could provide certain proofs.

Dr. Fountain diagnosed plaintiff as having a reactive depression, posttraumatic reaction, perhaps as a result of the accident. Plaintiff told the psychiatrist that he had not had any psychological or mental problems prior to the accident aside from some treatment eleven years earlier when he was fourteen and spent some time being treated at Lafayette Clinic in Detroit. Throughout his visits with Dr. Fountain, plaintiff continued to complain of the great difficulty he was having with the insurance company.

The insurer then arranged an independent medical examination with another psychiatrist, Dr.

Anthony Petrilli. Petrilli ultimately saw plaintiff eleven times over a one-year period in 1982 and 1983, and in his discharge summary diagnosed plaintiff as having a personality disorder. He further opined that plaintiff might be an individual who will go from crisis to crisis. If so, it would not matter whether or not he had been involved in the automobile accident. Petrilli did not believe that plaintiff's personality disorder was traumatically induced, but rather that he had a personality disorder most of his life and that his psychological problems were not related to the accident. However, Petrilli thought that any conclusion as to whether plaintiff had suffered a closed-head injury would be better answered by a neurosurgeon or neuropsychologist who could perform the proper tests.

Petrilli referred plaintiff to Dr. Bal A. Gupta, a psychiatrist who principally practiced in the area of psychopharmocology treating the underlying problems of chemical imbalances which relate to psychological problems. Under Gupta's care, plaintiff spent over a month in the hospital and participated in psychological testing. Dr. Gupta's final diagnosis was postconcussion syndrome secondary to injuries sustained in the accident.

Dr. Gupta also testified that he gave plaintiff a test for depression during which he was given a dose of medicine and then a blood test on the next day. Gupta said that this test had been developed in the last two years and was not foolproof. Plaintiff's test was positive which indicated to Gupta that plaintiff was definitely sick, definitely depressed, and that this was most likely due to the injury he sustained in the accident for which he never received adequate treatment. However, at trial it was pointed out on cross-examination that Dr. Gupta, who first examined plaintiff almost

three years after the accident, had not reviewed any of the medical records taken after the accident, nor had he reviewed the records of any doctors plaintiff had treated with except for the letter from Dr. Petrilli. Gupta's diagnosis was based on the symptoms presented by plaintiff and by plaintiff's relation of his history.

Dr. Gupta referred plaintiff to Dr. Bernard Bast, a clinical psychologist who obtained a neuropsychological history from plaintiff and administered a battery of neuropsychological tests. Dr. Bast did not find organic brain damage such as could be suffered from a closed-head injury. Instead, he diagnosed character problems and a personality disorder. The personality disorder was not traumatically induced but stemmed from a long life-pattern of behavioral traits. It was Bast's opinion that plaintiff's behavior would probably be the same with or without the accident.

At trial, plaintiff, his wife and some relatives and friends testified to the differences in his behavior and his life before and after the accident. Defendant introduced at trial the deposition testimony of plaintiff, taken nine months after plaintiff began treating with Dr. Fountain, in an attempt to impeach plaintiff as to his claims for mental injuries. In the deposition, plaintiff testified that at that time the only problems he had relating to the accident were soreness and pain in various parts of his body. No mention was made of any mental problems.

The trial court denied plaintiff's motion for a directed verdict on the issue of serious impairment, stating that the jury could disbelieve the testimony of plaintiff and the witnesses who testified on his behalf. The trial court also denied defendant's separate motions for a directed verdict that plaintiff's physical and mental injuries failed

to meet the "serious impairment" threshold. The court also denied defendant's additional motion for a directed verdict as to plaintiff's mental injuries on the basis that they resulted from his problems with his insurance company.

The Michigan Supreme Court has recently reexamined § 3135(1) of Michigan's no-fault insurance law which permits a person injured in a motor-vehicle accident to recover damages for noneconomic loss from a negligent owner or operator of a motor vehicle. In *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986),[2] the Supreme Court reviewed five cases from the lower courts which applied the rules for serious impairment claims that were previously articulated in *Cassidy v McGovern*, 415 Mich 483; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983). In *DiFranco*, a majority of the Court stated that even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries, the question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer. 415 Mich 38. An appellate court, reviewing orders granting or denying summary disposition, directed verdict and judgment notwithstanding the verdict, repeats this inquiry viewing the evidence in the light most favorable to the nonmoving party. 415 Mich 38-39. If the threshold issue was properly submitted to the trier of fact, in this case the jury, the findings should not be disturbed unless they are against the great weight of the evidence. 415 Mich 39.

---

[2] Because this case is a "currently pending appeal in which an issue concerning the proper interpretation of the statutory phrase 'serious impairment of body function' has been raised . . . ," the holding of *DiFranco* is applicable to this appeal.

The trial court in this case, by denying plaintiff's motion for a directed verdict, correctly concluded that there was a material factual dispute as to the nature and extent of plaintiff's injuries that raised issues for the jury to decide. As to plaintiff's physical injuries, his overall impairment was not so "serious" within the meaning of the word as used in the statute that all reasonable minds would have concluded that it was serious. In fact, based on the medical testimony regarding plaintiff's physical injuries, if any party was entitled to a directed verdict, it was defendant. Nonetheless, we cannot alternatively say that all persons would have concluded that plaintiff's impairment was not serious. Thus, the threshold issue was properly submitted to the jury.

As to plaintiff's claim of mental injuries, there were substantial disputes in the testimony over which reasonable minds could differ on whether the impairment was serious or whether it flowed from the accident. While Dr. Gupta opined that plaintiff suffered from postconcussion syndrome secondary to injuries sustained in the accident, Dr. Petrilli and Dr. Bast both doubted that plaintiff had suffered organic brain damage and instead attributed the psychological problems to a preexisting character or personality disorder. Moreover, defendant offered evidence to suggest that plaintiff's problems flowed from a dispute with his insurer rather than directly from the accident. Defendant also offered plaintiff's deposition to show that he had not complained of any mental injuries from the accident until quite some time after the accident. In short, there was ample evidence demonstrating that genuine issues of material fact existed as to the nature, onset and extent of plaintiff's emotional problems.

The standard for a directed verdict is well-estab-

lished. In *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975), the Supreme Court said:

> The jury, not the trial judge, is the trier of fact. Whenever a fact question exists, upon which reasonable persons may differ, the trial judge may not direct a verdict. Conversely, when no fact question exists, the trial judge is justified in directing a verdict. In deciding whether or not to grant a motion for a directed verdict, the trial judge must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, the motion for a directed verdict must be denied.

Under this standard, the questions of whether plaintiff's mental injuries stemmed from the accident and whether they amounted to a serious impairment of body function were properly submitted to the factfinder in this case. Accord, *DiFranco v Pickard, supra.*

Plaintiff also argued that the jury verdict of no cause of action was against the great weight of the evidence and that the judge should have granted him either a new trial or a judgment notwithstanding the verdict. In *Smart v The New Hampshire Ins Co,* 148 Mich App 724, 731; 384 NW2d 772 (1985), this Court reiterated the applicable standards of review for motions for a new trial and judgment notwithstanding the verdict:

> When faced with a motion for judgment notwithstanding the verdict the court must view the evidence in a light most favorable to the nonmoving party and decide if the facts presented preclude judgment for the nonmoving party as a matter of law. If the evidence is such that reasonable men

could differ, the question is one for the jury and judgment notwithstanding the verdict is improper. See *Drummey v Henry,* 115 Mich App 107; 320 NW2d 309 (1982), lv den 417 Mich 895 (1983). This Court does not reverse a trial court's decision to deny a motion for new trial unless the trial court abused its discretion by doing so. *Commercial Union Ins Co v Liberty Mutual Ins Co,* 137 Mich App 381, 386; 357 NW2d 861 (1984).

Thus, our standard of review is whether the jury's verdict was against the great weight of the evidence. *DiFranco v Pickard, supra. Wigginton v City of Lansing,* 129 Mich App 53, 60; 341 NW2d 228 (1983), lv den 419 Mich 880 (1984). We afford deference to the trial judge's decision since the trial judge, having heard the witnesses, is uniquely qualified to judge the jury's assessment of their credibility. We will not substitute our judgment for that of the jury unless our review of the record reveals a miscarriage of justice. *Groth v DeGrandchamp,* 71 Mich App 439, 441; 248 NW2d 576 (1976).

Under the disputed facts of this case, the jury's verdict was no miscarriage of justice. As we discussed when considering the trial court's denial of the directed verdict motion, while plaintiff's mental injuries may well demonstrate a serious impairment of body function, there was considerable evidence disputing plaintiff's assertion that his mental condition was attributable to or affected by the accident. Because the jury's verdict was a general verdict, we cannot speculate as to precisely why it found no cause of action. Nonetheless, it is clear that the verdict, when viewed under the applicable standards, was not against the overwhelming weight of the evidence. The trial court did not abuse its discretion in denying plain-

tiff' motions for a new trial or judgment notwith-
standing the verdict.

Finally, plaintiff predicates his third claim of
error on the trial court's refusal to give the follow-
ing jury instruction:

> It may be brought out that the Plaintiff has
> received benefits from his no-fault insurance car-
> rier, while he was out of work or to pay medical
> bills. Receipt of no-fault benefits, if any, does not
> bar a recovery by the Plaintiff against the Defen-
> dant for noneconomic losses, as pain, suffering and
> mental anguish, or for the loss of earning capacity
> over and above that which was reimbursed by his
> no-fault carrier. The no-fault carrier pays benefits
> for loss of wages for the three years following the
> accident.

Plaintiff argued for the instruction on the basis
that no-fault benefits do not bar further collection
of damages and that no-fault benefits only provide
for lost wages for three years. The trial court first
noted that the instruction was not a standard jury
instruction, then pointed out that plaintiff was not
seeking lost wages, but damages for loss of earning
capacity, and refused to give the requested instruc-
tion.

The trial judge has a duty to give nonstandard
jury instructions where the instructions are neces-
sary to properly instruct on the law. *Cornforth v
Borman's, Inc,* 148 Mich App 469, 480; 385 NW2d
645 (1986); MCR 2.516(D)(4). However, in light of
the Michigan Supreme Court's decision in *Ouel-
lette v Kenealy,* 424 Mich 83; 378 NW2d 470
(1985), the requested instruction is not an accurate
statement of the law because the Court in that
case specifically held that damages are not recov-
erable for loss of earning capacity. See also *Clark
v Auto Club Ins Ass'n,* 150 Mich App 546; 389

NW2d 718 (1986). In the instructions actually given, the trial court included plaintiff's list of damages and instructed the jury on each of the claimed elements of damages. It actually instructed on loss of earning capacity (erroneously, but harmless error since the jury found for defendant), physical pain and suffering, mental anguish, fright and shock, denial of social pleasure and enjoyment, embarrassment, humiliation and mortification, and disability including the impairment of the functioning of plaintiff's back, nervous system and mind. As to each of these elements of damages, the trial court instructed the jury:

> [I]f you decide that the plaintiff is entitled to damages it is your duty to determine the amount of money which reasonably, fairly and adequately compensates for each of the elements of damage which you decide have resulted from the negligence of the defendant, taking into account the nature and extent of the injury.

Thus, the jury was instructed to award damages for each of the elements of damages it found plaintiff had suffered as a result of any negligence by defendant which resulted in a serious impairment. We find without merit plaintiff's argument that the instructions actually given could have led the jury to believe that plaintiff had already been compensated for his damages by the receipt of no-fault wage loss and medical benefits. Moreover, given the general verdict of no cause of action in this case, it is not clear whether the jury even reached the damages issue. Accordingly, we find no error in the trial court's denial of plaintiff's supplemental instruction request, which is not a standard jury instruction and which was partially based on what has been found to be an inaccurate statement of the law.

None of plaintiff's assignments of error are meritorious. The jury verdict of no cause of action in favor of the defendant is affirmed. 427 Mich 75.