KALLIO v FISHER

Docket No. 106784. Submitted May 4, 1989, at Marquette. Decided
August 23, 1989.

Gregory Kallio was injured while a passenger in an automobile
driven by Robert W. Resner, Jr., when that automobile was
struck by an automobile driven by David P. Fisher. Kallio was
taken to the nearest hospital where he was diagnosed by an
emergency room physician as suffering from acute cervical
spine injury, a sprained right wrist, abrasions and contusions.
Kallio was discharged from the emergency room, having been
advised to rest, to avoid excessive activity, to take pain pills as
directed and to wear a cervical collar for seventy-two hours
until he could be seen by his family physician. Kallio saw his
family physician twelve days later and was diagnosed as suffer-
ing from whiplash. A little over two months later the family
physician determined that Kallio's injury was completely
healed. Over eight months later, on advise of his attorney,
Kallio saw another doctor, who concluded that plaintiff was
suffering from a chronic cervical-dorsal strain which was caus-
ally related to the accident. Kallio brought an action in Mar-
quette Circuit Court against David P. Fisher, Bruce G. Fisher
and Robert W. Resner, Jr., for noneconomic losses, alleging
that he suffered a serious impairment of a body function.
Defendants moved for summary judgment on the basis that
serious impairment of a body function had not been shown. The
trial court, Edward A. Quinnell, J., granted the motions. Plain-
tiff appealed.

The Court of Appeals *held:*

The trial court did not err in determining that plaintiff had
failed to establish a jury question as to whether he had suffered
a serious impairment of a body function. Because plaintiff did
not satisfy the statutory threshold to maintain an action for
noneconomic damages, summary judgment in favor of defen-
dants was proper.

Affirmed.

REFERENCES

Am Jur 2d, Automobile Insurance §§ 358, 359, 365.

See the Index to Annotations under Exemptions and Exclusions;
No-Fault Insurance.

MURPHY, P.J., dissented. He would hold that there was a jury question as to whether plaintiff suffered a serious impairment of a body function. He would reverse.

INSURANCE — NO-FAULT — NONECONOMIC LOSS — SERIOUS IMPAIRMENT OF BODY FUNCTION — SUMMARY DISPOSITION.

It is not error for a trial court to grant summary disposition in favor of a defendant on the basis of the failure of the plaintiff to establish the no-fault threshold for noneconomic damages of a serious impairment of a body function where the plaintiff suffered only minor complaints following the automobile accident, saw a physician on only a few occasions and was considered by the family physician to be healed (MCL 500.3135[1]; MSA 24.13135[1]).

*Wisti & Jaaskelainen, P.C.* (by *Andrew H. Wisti*), for plaintiff.

*John A. Lydick,* for David P. and Bruce G. Fisher.

*Weber, Swanson, Hoff & Dettmann* (by *Darrell R. Dettmann*), for Robert W. Resner, Jr.

Before: MURPHY, P.J., and MACKENZIE and GRIFFIN, JJ.

PER CURIAM. Plaintiff appeals as of right from a circuit court order granting summary disposition in favor of defendants. The court found that as a matter of law plaintiff's injuries did not amount to serious impairment of body function, the threshold necessary for recovery of noneconomic damages under the Michigan no-fault insurance act, MCL 500.3135(1); MSA 24.13135(1). We affirm.

In *DiFranco v Pickard,* 427 Mich 32, 38; 398 NW2d 896 (1986), our Supreme Court held that "[t]he question whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the

answer." In this case we agree with the trial court that reasonable minds could not differ in concluding that plaintiff's injuries did not constitute serious impairment of body function.

Plaintiff's cause of action arose out of an automobile accident which occurred while he was asleep in the back of defendant Resner's car when it collided with the motor vehicle driven by defendant David Fisher. Plaintiff was transported to the nearest hospital by private vehicle where he was admitted to the emergency room at 3:47 A.M. and diagnosed as suffering from an acute cervical spine injury, a sprained right wrist, abrasions, and contusions. Prior to his 5:40 A.M. discharge, plaintiff was advised by the emergency physician to rest, avoid excessive activity, take pain pills as directed, and wear a soft cervical collar for seventy-two hours until he could be seen by his family physician.

Plaintiff did not see his family physician until twelve days later, at which time plaintiff's condition was diagnosed as whiplash injury which limited plaintiff's range of motion in his neck by twenty-five percent. A little over two months later, plaintiff again saw his family doctor, who determined that plaintiff's injury had completely healed. At this point plaintiff's only symptom was pain in the left side of his neck. Plaintiff continued to work during this time period as a carpenter and thereafter as a roofer. On the advice of his attorney, 8½ months after the accident plaintiff saw another physician, Dr. Meier. Dr. Meier concluded that plaintiff was suffering from a chronic cervical-dorsal strain which was causally related to the 1986 motor vehicle accident.

We find this case analogous to *Johnston v Thorsby*, 163 Mich App 161; 413 NW2d 696 (1987). There, the plaintiff suffered lumbosacral strain

and was prescribed pain killers. She underwent some physical therapy, and her doctor considered her injuries completely healed. This Court concluded that the plaintiff's injury was not a serious impairment of body function, so that, under *DiFranco,* the issue need not have been submitted to the jury.

Here, plaintiff had only minor complaints following the accident, sought a physician's help only three times (one of which was at the advice of his attorney), and was considered healed by his family physician. As in *Johnston,* we conclude that reasonable minds could not differ in concluding that plaintiff's injuries did not constitute serious impairment of body function. The circuit court did not err by granting summary disposition to defendants.

Affirmed.

MURPHY, P.J. *(dissenting).* I dissent because I believe the majority has not properly applied the holdings in *DiFranco v Pickard,* 427 Mich 32; 398 NW2d 896 (1986), to the facts of this case.

Initially, a review of some of the Supreme Court's pertinent holdings in *DiFranco* is in order. The Court held:

> 1) The question whether the plaintiff suffered a serious impairment of body function *must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer.* This is true even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries.
>
> 2) In deciding motions for, and reviewing orders granting or denying, summary disposition, directed verdict and judgment notwithstanding the verdict, *the court must view the evidence in the light most favorable to the nonmoving party* and determine:

a) whether a material factual dispute exists as to the nature and extent of the plaintiff's injuries, and

b) whether reasonable minds could differ regarding whether the plaintiff had sustained a serious impairment of body function.

* * *

9) Section 3135(1) [MCL 500.3135(1); MSA 24.13135(1)] and *Cassidy* [v *McGovern,* 415 Mich 483; 330 NW2d 22 (1982)] require the plaintiff to prove that his noneconomic losses arose out of a medically identifiable injury which seriously impaired a body function. *The interpretation of* Cassidy's *"objectively manifested injury" requirement adopted in* William v Payne, *131 Mich App 403; 346 NW2d 564 (1984), is rejected.* [*Id.,* pp 38-40. Emphasis added.]

Based on the foregoing, it is eminently clear that this Court is required to view the evidence in plaintiff's favor even absent a material factual dispute existing as to the nature and extent of plaintiff's injuries. However, in this case there is a material factual dispute between Drs. Belej and Meier as to the nature and extent of plaintiff's injuries. In addition, this Court must be *certain* that plaintiff's injuries are "so minor" or of a "clearly superficial nature" before it can be said that the serious impairment threshold is a question of law. *DiFranco, supra,* pp 51-52.

The facts in the case clearly established that on October 22, 1986, plaintiff was wearing his seat belt in the back seat of a car which was struck by another automobile. Plaintiff hit his head and suffered contusions. Plaintiff was taken to a hospital emergency room and diagnosed as suffering an *acute* cervical spine injury. Plaintiff was prescribed Tylenol #3 and told to wear a cervical collar for seventy-two hours. After returning home

on November 3, 1986, plaintiff sought treatment from his physician, Dr. Marco Belej, an internal medicine specialist. Dr. Belej diagnosed plaintiff's condition as a whiplash injury that limited the range of motion in plaintiff's neck by twenty-five percent and a condition which caused much pain.

Some 2½ months after the accident, on January 6, 1987, plaintiff again saw Dr. Belej. At that time, although plaintiff still complained of pain, Dr. Belej felt plaintiff's injury had completely healed.

On July 7, 1987, plaintiff saw another physician, Dr. Maurice Meier, at the request of plaintiff's attorney. Dr. Meier diagnosed plaintiff as suffering from a chronic cervical dorsal strain which was causally related to the October 22, 1986, automobile accident. In September, 1987, at his deposition, plaintiff still complained of pain in his neck and stated that he still wore the cervical collar on occasion. In February, 1988, the trial court dismissed plaintiff's complaint.

The majority relies on *Johnston v Thorsby,* 163 Mich App 161; 413 NW2d 696 (1987), as factually analogous to the instant case. I disagree. The facts in *Thorsby* as stated by this Court are the following:

> The record in the instant case shows that plaintiff saw a doctor shortly after the accident. Her lower back pain was diagnosed as lumbosacral strain, and she was prescribed Tylenol. Plaintiff then waited two years before seeing any other doctors regarding her alleged accident-related injury to her shoulder. Her treating doctor at the time said that plaintiff might have had a torn rotator cuff, but, if she did, it had long since healed. After plaintiff underwent some physical therapy, the doctor indicated that her shoulder had adequately healed and that he did not anticipate future problems. [*Id.,* p 163.]

One major distinction between *Thorsby* and this case is that plaintiff here has a second opinion from a physician who diagnoses plaintiff as still suffering from a chronic cervical strain. In addition, it appears plausible that plaintiff's injury, initially diagnosed as an *acute* cervical spine injury, is a more serious injury than one diagnosed as a lumbosacral strain.

The majority also seems to find it telling that plaintiff saw another physician on the advice of his attorney. However, it appears to me that the majority is implying plaintiff is some form of a malingerer and Dr. Meier's diagnosis lacks credibility. I see no reason to impugn the credibility of plaintiff's injury absent some record support for such conclusion. I am also somewhat troubled by the majority's statement that plaintiff "sought a physician's help only three times." I am unaware of any requirement that a person injured in an automobile accident must make extensive visits to a physician to establish that they have possibly suffered a serious impairment of a body function. Simply, I am disturbed at why the majority apparently chooses to discredit Dr. Meier's diagnosis relative to plaintiff's injury. That diagnosis, in my view, sufficiently establishes a factual dispute regarding the nature and extent of plaintiff's injury.

I also note that this Court in *Beard v Detroit,* 158 Mich App 441; 404 NW2d 770 (1987), lv den 428 Mich 901 (1987), on the basis of the plaintiff's subjective complaints of pain, held that there was a material factual dispute as to the nature and extent of the plaintiff's injuries that raised issues for the jury to decide.

The facts in *Beard* revealed that the plaintiff's vehicle was struck in the rear by a bus. The plaintiff remembered being thrown backward and maybe also hitting his head on the steering wheel

or dashboard. When the ambulance arrived, the
plaintiff declined to go to the hospital. An investi-
gating officer stated that the plaintiff complained
of injury but exhibited no signs of injury or shock.
The plaintiff drove his vehicle home and then
went with his wife to a hospital emergency room
where he was given a muscle relaxant and a
prescription for Tylenol #3. Although he was
diagnosed as having suffered a "cervical sprain,"
x-rays of his skull and spine revealed no fracture
or abnormality and he returned home. *Id.,* p 444.
Several days later, the plaintiff went to a neurolo-
gist for treatment of dizziness and back pain. The
neurologist prescribed physical therapy three
times a week for about six months. The neurolo-
gist's deposition indicated that the plaintiff's clini-
cal symptoms during this time were *subjective
complaints.* The only objective finding that sup-
ported the plaintiff's complaint was described as
one EMG; however, an EMG done two months later
did not reveal any problems. A chiropractor noted
that the plaintiff suffered extreme sensitivity in
the cervical spine area. The chiropractor's progno-
sis was that no permanent disability was expected.
A physician who saw the plaintiff for pain man-
agement believed that the plaintiff would not need
any restrictions in terms of physical activities. In
any event, the plaintiff suffered depression which
was possibly related to the accident.

Based on the foregoing, this Court stated,

> As to plaintiff's physical injuries, his overall
> impairment was not so "serious" within the mean-
> ing of the word as used in the statute that all
> reasonable minds would have concluded that it
> was serious. *In fact, based on the medical testi-
> mony regarding plaintiff's physical injuries, if any
> party was entitled to a directed verdict, it was
> defendant. Nonetheless, we cannot alternatively*

*say that all persons would have concluded that*
*plaintiff's impairment was not serious. Thus, the*
*threshold issue was properly submitted to the jury.*
[*Id.,* p 450. Emphasis added.]

If the facts in *Beard* were sufficient to have a
jury determine whether the plaintiff's impairment
was serious, I am hard pressed to see how the
majority can deny plaintiff the opportunity to have
a jury determine if his injury constitutes a serious
impairment of a body function.

Based on the foregoing, it is my conclusion that
in viewing the evidence in the light most favorable
to plaintiff, the question whether plaintiff suffered
a serious impairment of body function must be
submitted to the trier of fact because: (1) a mate-
rial factual dispute exists as to the nature and
extent of plaintiff's injuries and (2) reasonable
minds could differ regarding whether plaintiff sus-
tained a serious impairment of body function.
*DiFranco, supra,* p 38. Therefore, I would reverse
the lower court's order granting defendant's mo-
tion for summary disposition.