972 F.2d 346
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Stanley Titus AGACINSKI and Ina Agacinski, Plaintiffs-Appellants,
v.
Gerald M. ZAMBOROWSKI, Defendant-Appellee.
 No. 91-1850.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1992.
 
 Before BOYCE F. MARTIN, Jr. and SILER, Circuit Judges, and DOWD, District Judge.[1]
 PER CURIAM.
 
 
 1
 The district court granted Gerald Zamborowski, the defendant, a directed verdict in this action on the grounds that the damages proven by Stanley and Ina Agacinski were speculative. The Agacinskis now appeal the district's court order. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 In 1981, the Agacinskis entered into a business agreement with Harvey and Linda Collins, who were doing business as Floorcraft Floor Covering. Under the agreement, the Agacinskis agreed to give the Collinses the equity in a boat, which was valued at $13,100 and, in return, the Collinses agreed to give the Agacinskis a one-half interest in certain trucks and equipment that were related to a trucking operation. The Collinses and the Agacinskis also agreed to share in the profits and losses of the trucking operation.
 
 
 3
 Trouble began shortly after the joint venture went into operation. Although the Agacinskis had transferred their equity in the boat to the Collinses, the Agacinskis apparently never received the one-half interest in the trucks and equipment. Meanwhile, Stanley Agacinski worked for the Collinses delivering and installing floor covering and carpeting. Over a period of time, however, the Collinses underpaid Stanley Agacinski by $12,000 and asserted that the $12,000 was going toward the joint venture. In 1983, the Collinses brought an action in Michigan state court against the Agacinskis asserting that the trucking business had lost money and that the Agacinskis had to contribute their fair share of the losses. The Agacinskis hired Zamborowski to defend them in the action and to file a counterclaim against the Collinses.
 
 
 4
 While the action was pending in state court, the Collinses and the Agacinskis tentatively agreed to settle the case. Under the proposed agreement, the Collinses agreed to dismiss their lawsuit in its entirety and pay the Agacinskis $1,200. The parties, however, never finalized the proposed settlement. While Zamborowski was on vacation, the Collinses returned to state court and obtained two default judgments against the Agacinskis. The first default judgment caused the Agacinskis to lose their boat, which was worth approximately $13,000. The second default judgment was a money judgment that was valued $13,352.93 at time of execution. When Zamborowski returned from his vacation, he learned of the Collinses' action. Zamborowski wrote a letter to the opposing attorney and stated that he was surprised the Collinses would "throw away the opportunity to settle my client's counter-claim for the return of thousands of dollars of embezzled funds by the payment of a mere $1200.00." Zamborowski also threatened he would file a motion to set aside the default judgments and would ask the court to allow him to file a delayed answer and counter-complaint. Despite these threats, however, Zamborowski never took any such action related to the case.
 
 
 5
 As a result of the $13,352.93 default judgment, the Collinses placed a lien against the home owned by the Agacinskis. When the Agacinskis sold their home in October 1986, the title insurer failed to discover the existence of the lien and therefore had to pay the Collinses approximately $13,000. The title insurer, in turn, obtained a judgment against the Agacinskis for the amount it paid the Collinses.
 
 
 6
 On April 12, 1989, the Agacinskis filed this action in federal district court asserting that Zamborowski was professionally negligent in his representation of them in the state court action. On May 3, 1990, the district court determined that Zamborowski had failed to answer the requests for admissions in a timely manner and therefore under Fed.R.Civ.P. 36 the requests were automatically admitted. Based on this determination, the district court granted the Agacinskis a partial summary judgment and held that (1) Zamborowski negligently handled the Agacinskis' state court litigation; and (2) Zamborowski's negligence proximately caused the Agacinskis' injuries. Because the district court granted summary judgment on the liability issue, the court concluded the only issue remaining for trial was the issue of damages. Subsequently, the issues for trial were further narrowed when, just prior to the damages trial, Zamborowski agreed to settle the damages related to the lien placed on the Agacinskis' home.
 
 
 7
 At the damages trial, Stanley Agacinski testified that the Agacinskis never received from the Collinses the one-half ownership interest in the trucking equipment in exchange for the Agacinskis' boat. He also testified that while he was working for the Collinses, they had underpaid him by approximately $12,000. Finally, Stanley Agacinski admitted, in effect, that (1) the Agacinskis' damages were tied to the question of whether the Agacinskis owed money to the Collinses, or vice versa; and (2) it was totally speculative as to which party owed the other party money.
 
 
 8
 At the conclusion of the Agacinskis' case, Zamborowski moved for, and received, a directed verdict on the damages issue. In granting the directed verdict, the district court stated from the bench:
 
 
 9
 Mr. Agacinski in his testimony which the Court had reread to it in chambers by the court reporter said that he did not know whether the joint venture with the Collinses experienced a profit or a loss. Plaintiffs have introduced no other evidence to show that the joint venture made a profit and the Court believes it would be speculative to permit the jury to presume that the joint venture made a profit.
 
 
 10
 Moreover, the court will say all of the damages claimed by the plaintiff in this Court's opinion are damages resulting from the breach of the contract which created the joint venture....
 
 
 11
 The Court now therefore grants a directed verdict on the remaining portion of the claim in favor of the defendant because the Court feels the plaintiffs have failed in their proofs.
 
 
 12
 On June 19, 1991, the district court entered an order granting Zamborowski's motion for a directed verdict.
 
 
 13
 On appeal, the Agacinskis assert that the district court erred in granting Zamborowski a directed verdict on the damages issue.[2] They assert that even though the profits and losses associated with the trucking business were speculative, there was nothing speculative about the value of the boat they lost in the default judgment or about the $12,000 that the Collinses withheld from Stanley Agacinski's wages.
 
 
 14
 Initially, we note that in analyzing the motion for a directed verdict the district court stated that federal law, not Michigan law, provided the standard for a directed verdict. The district court also stated that the federal standard for a directed verdict was the same as the Michigan standard. The district court, however, was incorrect in its assertion that federal law provided the standard for a directed verdict in the case before the court. A federal court exercising its diversity jurisdiction, such as in this case, applies the standard for a directed verdict used by the courts of the state whose substantive law governs. Arms v. State Farm Fire & Casualty Co., 731 F.2d 1245, 1248 (6th Cir.1984). Because Michigan law provides the substantive law in this case, we apply the Michigan standard for directed verdicts. In deciding whether or not to grant a motion for a directed verdict, a Michigan court must accord to the non-moving party the benefit of viewing the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the non-moving party. If the evidence, when viewed in this manner, establishes a prima facie case, then the court must deny the motion for a directed verdict. Beard v. Detroit, 404 N.W.2d 770, 774 (Mich.App.) ( quoting Caldwell v. Fox, 394 Mich. 401 (1975)), appeal denied, 428 Mich. 901 (1987); Thomas v. McPherson Community Health Center, 400 N.W.2d 629, 630 (Mich.App.1986). Thus, although the district court was incorrect about the source of the directed verdict standard, it was correct in its assertion that the Michigan standard for directed verdicts is essentially the same as the federal standard. See, e.g., Lewis v. Irvine, 899 F.2d 451, 454 (6th Cir.1990) (in a case involving the federal standard, the court stated that (1) in reviewing a motion for a directed verdict, a court must determine whether there is substantial evidence from which the jury could find in favor of the non-moving party; and (2) this must be done without weighing the credibility of the witnesses or considering the weight of the evidence). In reviewing a trial court's action on the motion for a directed verdict, an appellate court must determine whether a reasonable jury could have found in favor of the non-moving party. See Rushing v. Wayne County, 462 N.W.2d 23, 28 (Mich.1990), cert. denied, 113 L.Ed.2d 245 (1991).
 
 
 15
 Under Michigan law, in order for a plaintiff to establish a claim of attorney negligence or malpractice, the plaintiff must prove:
 
 
 16
 (1) the existence of the attorney-client relationship;
 
 
 17
 (2) the acts that are alleged to have constituted the negligence;
 
 
 18
 (3) the attorney's negligence was the proximate cause of the injury; and
 
 
 19
 (4) the fact and extent of the injury alleged.
 
 
 20
 Basic Food Industries v. Grant, 310 N.W.2d 26, 28 (Mich.App.1981). Before trial, the district court in this case held that (1) Zamborowski negligently handled the Agacinskis' state court litigation, and (2) his negligence was the proximate cause of the Agacinskis' injuries.[3] Thus, the first three elements of a legal malpractice claim were established before trial and they remain established on appeal. Hence, the center of dispute is really whether a reasonable jury could have found that the Agacinskis established the remaining element--the fact and extent of the injury.
 
 
 21
 In this case, we believe the district court correctly granted a directed verdict to Zamborowski. At trial, Stanley Agacinski testified, in effect, that (1) the damages amounts were tied to the question of whether the Agacinskis owed the Collinses money over the trucking business, or vice versa; (2) it was totally speculative as to which party owed the other party money; and (3) he had disposed of many of the documents related the business venture. Viewing this and the remaining evidence in a light most favorable to the Agacinskis, we believe there was insufficient evidence to establish a prima facie case regarding the extent of the damages that were attributable to Zamborowski's negligence. Even though the Agacinskis may have established the value of the boat and the value of the withheld wages, any damages were inextricably linked to the profits and losses of the trucking business. In other words, the damages associated with the Agacinskis' malpractice claim really turn on whether, in the underlying suit, the Collinses would have owed the Agacinskis money, or vice versa. Without knowing what the profits and losses of the trucking business were, it would be impossible for a reasonable jury to calculate--without mere speculation--the extent of the Agacinskis' injury. Proof of damages must be based on factual evidence, not on mere speculation. Basic Food Industries, 310 N.W.2d at 30 n. 2. Thus, the district court did not err in granting a directed verdict to Zamborowski.
 
 
 22
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [2]
 Effective on December 31, 1991, Fed.R.Civ.P. 50 eliminated the term "directed verdict" and replaced it with the term "judgment as a matter of law." At the time the parties tried this cased, however, Rule 50 still used the term "directed verdict."
 
 
 [3]
 Zamborowski does not challenge these findings