# STATE OF MICHIGAN

# COURT OF APPEALS

THERESA LYNN WILCOX,

        Plaintiff-Appellant,

v

JAMIE LEE BEALS,

        Defendant-Appellee.

UNPUBLISHED
May 5, 2015

No. 318229
Lapeer Circuit Court
LC No. 11-044747-NO

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals by right from a jury verdict of no cause of action in her automobile negligence suit against defendant. She asserts that the trial court made several erroneous evidentiary rulings concerning the testimony of her treating chiropractor, Dr. Michael Warnars. She also claims that the trial court erred in permitting the admission of a surveillance video of plaintiff taken by a private investigation firm retained by defense counsel. We affirm. The trial court did not abuse its discretion in allowing admission of the surveillance video. We do find error in the court's rulings limiting, as a matter of law, the scope of testimony that may be given by a chiropractor. However, we affirm several of the rulings on other grounds and conclude, after a review of the entire record, that the remaining errors were harmless and so do not merit reversal.

## I. FACTUAL BACKGROUND

On February 26, 2011, defendant failed to stop at a posted stop sign and drove into oncoming traffic, causing a collision with a vehicle driven by plaintiff. Plaintiff later filed suit against defendant, seeking damages for injuries to her neck, back, shoulders, and knees. At trial, defendant conceded that he was negligent and that his negligence caused the collision. After the close of proofs, the jury was instructed to determine the amount, if any, of plaintiff's excess wage loss attributable to defendant's negligence. It was also instructed to determine if, as a result of the accident, plaintiff had suffered serious impairment of body function and, if so, to determine the amount of her noneconomic damages. The jury concluded that plaintiff neither suffered excess wage loss nor had she suffered a serious impairment. A judgment of no cause of action was entered from which plaintiff now appeals.

-1-

## II. EVIDENTIARY LIMITATIONS OF CHIROPRACTOR'S TESTIMONY

Plaintiff asserts that the trial court improperly limited the testimony of Warnars, her treating chiropractor. Specifically, plaintiff argues that the trial court erred by prohibiting Warnars from testifying as to (a) her knee and shoulder injuries, i.e., injuries not directly related to her spine, (b) her disabilities, limitations, and restrictions, and (c) whether plaintiff had suffered a serious impairment of body function.[1]

### A. KNEE AND SHOULDER INJURIES

It is undisputed that Warnars has been a Michigan-licensed chiropractor for 31 years and was properly qualified as an expert witness in chiropractic medicine. "The general rule is that a chiropractor is qualified to testify in a personal injury action concerning matters within the scope of his profession or practice." *Corbin v Hittle*, 34 Mich App 631, 636-637; 192 NW2d 38 (1971) (citations omitted). While the trial court appears to have recognized this general principle, its understanding as to the statutory scope of the practice of chiropractic was fundamentally incorrect. The court concluded that chiropractic practice, and so testimony based upon it, extended only to spinal "subluxations [and] misalignments," thus precluding any testimony regarding plaintiff's knee and shoulder. However, this limitation was removed by a 2009 amendment to the relevant statute.[2]

MCL 333.16401(1)(e), as amended, now provides:

"Practice of chiropractic" means that discipline within the healing arts that deals with the *human nervous system and the musculoskeletal system and their interrelationship with other body systems*. Practice of chiropractic includes the following:

(*i*) *The diagnosis of human conditions and disorders of the human musculoskeletal and nervous system as they relate to subluxations, misalignments, and joint dysfunctions*. These diagnoses shall be for the purpose of detecting and correcting those conditions and disorders or offering advice to seek treatment from other health professionals in order to restore and maintain health.

(*ii*) The evaluation of conditions or symptoms related to subluxations, misalignments, and *joint dysfunction* . . . .

[Emphasis added.]

---

[1] "A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence." *Albro v Drayer*, 303 Mich App 758, 760; 846 NW2d 70 (2014).

[2] 2009 PA 223, effective January 5, 2010.

The statute defines "musculoskeletal system" as "the system of muscles, tendons, ligaments, bones, joints and associated tissues that moves the body and maintains its form." MCL 333.16401(1)(d). "Joint dysfunction" is defined as "a joint that is impaired so that it does not function properly." MCL 333.16401(1)(c). The language of the statute is clear and unambiguous. Chiropractic is not limited only to evaluation and treatment of "subluxations [and] misalignments." The practice of chiropractic also includes evaluation and treatment of "joint dysfunctions" which by statutory definition are not limited to the spine. It also includes "human conditions and disorders of the musculoskeletal and nervous systems as they relate to subluxations, misalignments and joint dysfunctions." MCL 333.16401(1)(e)(*i*). Thus, diagnosis and treatment of the alleged musculoskeletal injuries to plaintiff's shoulder and knee, like her claims of spinal subluxations, fell within the statutory scope of chiropractic practice and, accordingly, the trial court's ruling was legally erroneous.[3]

Nonetheless, the record makes clear that the limitation imposed on Warnars' testimony about plaintiff's knee was proper for a different reason, namely a lack of foundation. We find nothing in Warnars' testimony, plaintiff's testimony, the exhibits, or plaintiff's brief on appeal to suggest that Warnars evaluated, diagnosed, and/or treated plaintiff's knee. Moreover, plaintiff did not make an offer of proof when the issue arose at the pretrial motion hearing and again at trial describing what testimony Warnars would give concerning plaintiff's knee.[4] As to plaintiff's shoulder complaints, Warnars was permitted to testify that he observed range of motion limitations in that joint and that he concluded that they were due to cervical subluxations, rather than direct injury to the shoulder joint itself. He further testified as to the treatment he provided for the cervical subluxations and offered testimony as to the way in which these injuries

---

[3] MCL 333.16401(2) does provide several limits on chiropractic evaluation and treatment that were not at issue in this case. The subsection provides:

> The practice of chiropractic does not include any of the following:
>
> (a) The performance of any procedure that cuts or punctures the skin.
>
> (b) The dispensing or prescribing of drugs or medicine.
>
> (c) Except for diagnostic purposes only, the use of x-ray.
>
> (d) The performance of an invasive procedure involving a body orifice or cavity unless allowed by rules promulgated under section 16423 and limited to examinations involving the ears, nose, and throat.
>
> (f) The performance or ordering of non-x-ray diagnostic imaging tests that were not allowed under section 16423 as of December 1, 2009.

[4] Warnars testified that while he did not treat plaintiff's knee, he did refer her to an orthopedic specialist for diagnosis and treatment of the knee. The treating orthopedist provided extensive testimony at trial.

affected plaintiff's mobility and functioning. Thus, to the degree that Warnars diagnosed and treated plaintiff's shoulder complaints, he was actually permitted to testify.

Accordingly, despite employing incorrect legal reasoning, the trial court did not err in excluding Warnars testimony regarding plaintiff's knee. See *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000) ("we will not reverse the court's order when the right result was reached for the wrong reason"). And, because Warnars was actually permitted to testify regarding plaintiff's shoulder, the trial court's erroneous ruling was harmless and does not require reversal. MCR 2.613(A).[5]

## B. DISABILITY, RESTRICTIONS, OR LIMITATIONS

Plaintiff next argues that the trial court erred in ruling that Warnars could not testify as to plaintiff's "disability, restrictions or limitations" because such opinions were not within the scope of chiropractic. This ruling was erroneous. A chiropractor may testify as to the nature, cause, and extent of disabilities, restrictions, or limitations based upon his diagnosis and treatment of those conditions within the scope of the practice of chiropractic. See *Beard v Detroit*, 158 Mich App 441, 445-446; 404 NW2d 770 (1987) (this Court considered a chiropractor's testimony that the plaintiff was not permanently disabled and could return to work with moderate lifting restrictions); *DiFranco v Pickard*, 427 Mich 32, 86; 398 NW2d 896 (1986), superseded by statute on other grounds as stated in *McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517 (2010) (Supreme Court considered treating chiropractor's testimony regarding the plaintiff's injuries and resultant work-related lifting restrictions); *Corbin*, 34 Mich App at 636-637 (chiropractor could testify to the "permanency" of the plaintiff's injuries).

However, we are again satisfied that the trial court's analytical error did not result in reversible error, given the facts and record. First, as discussed, because Warnars did not diagnose or treat any knee injury, he lacked the foundation to testify as to any disability that arose from that injury. Second, Warnars was permitted to give testimony concerning limitations and restrictions on plaintiff's activities. He testified in significant detail, and without objection, regarding plaintiff's prognosis, her potential for recovery, and the physical limitations caused by the injuries for which he treated her. On at least five occasions, Warnars delivered lengthy descriptions of how plaintiff's injuries affected her ability to walk, stand, bend, and lift. He also discussed her poor prognosis as well as the effect her injuries have had on her ability to work, engage in her hobbies, and enjoy her life. In other words, despite the trial court's erroneous

---

[5] MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

analysis, Warnars was actually permitted to testify extensively as to the effect of plaintiff's injuries and her prognosis for recovery, i.e., being able to resume her pre-accident physical abilities and lifestyle.

Plaintiff is correct that the trial court did not permit Warnars to testify that he had disabled plaintiff from working or advised her to limit work. Rendering disability opinions is certainly something a chiropractor may do when the causative condition is one a chiropractor may diagnose and treat. See, e.g, *Beard*, 158 Mich App at 445-446. However, the record again reveals a lack of foundation for any such testimony. No offer of proof was made that Warnars would testify that plaintiff was unable to work or to work only limited hours and the record before us contains no disability slips from Warnars. Attached to plaintiff's brief on appeal is a October 11, 2011 letter from Warnars in which he states that plaintiff "continues to demonstrate significant physical restrictions" and recommends 90 days of the following restrictions: "1. No lifting greater than 15 lbs. No lifting above shoulder level or below waist level. No excessive pushing or pulling. 4. No repetitive bending, lifting or twisting." The letter concludes, "The patient may continue to work as a hairdresser." If, in fact, the trial court had been provided with this letter, plaintiff's claim of error would have more weight. However, it does not appear that this was the case. Moreover, the letter referred only to a 90-day period and, in it, Warnars stated that plaintiff could continue to work her regular job. Finally, the limitations on plaintiff's activity suggested by the letter were all described at length by Warnars in his testimony.

Accordingly, despite the trial court's erroneous legal analysis, we do not find reversible error. See *Taylor*, 241 Mich App at 458.

## C. SERIOUS IMPAIRMENT OF BODY FUNCTION OPINION

Lastly, plaintiff argues that the trial court erred by not permitting Warnars to offer an opinion as to whether plaintiff had suffered a "serious impairment of body function."

Under Michigan's no-fault act, which generally abolished tort liability for automobile accidents, "A person remains subject to tort liability for noneconomic loss caused by his . . . use of a motor vehicle only if the injured person has suffered . . . serious impairment of body function[.]" MCL 500.3135(1). Plaintiff alleged that she suffered serious impairment of body function, which is defined by the statute as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The statute further provides that:

> The issue[] of whether the injured person has suffered serious impairment of body function . . . [is] a question of law for the court if the court finds either of the following:
>
> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function . . . .

[MCL 500.3135(2); see *McCormick*, 487 Mich at 192-193.]

In this case, there can be little argument that there was a "factual dispute concerning the nature and extent" of plaintiff's injuries and that this factual dispute was "material to the determination whether [plaintiff] has suffered a serious impairment of body function." The trial court properly concluded that the jury was to determine, based upon the court's instructions, whether or not plaintiff's injuries reached that threshold and so the opinion sought from Warnars was one that embraced an ultimate issue of fact for the jury. However, that fact provides no basis to exclude Warnars' testimony. MRE 704 is directed at precisely this situation and provides that, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." See also MRE 702. Warnars should have been permitted to offer his opinion on whether plaintiff's injuries that fell within the scope of chiropractic resulted in serious impairment of body function and the trial court erred in ruling to the contrary.

However, given Warnars' extensive testimony as to the limits of plaintiff's functioning, the effect of this error was minimized. Moreover, the jury heard detailed testimony from plaintiff, her family, and her employer as to functional difficulties caused by her injuries which were consistent with Warnars' testimony and that of plaintiff's orthopedist. Accordingly, plaintiff is not entitled to reversal. MCR 2.613(A).

## II. ADMISSION OF THE INVESTIGATIVE VIDEO

Plaintiff argues that the trial court abused its discretion by denying her motion to exclude a surveillance video of plaintiff obtained from Shadow Investigations, a company retained by plaintiff's counsel. Plaintiff asserts that because defendant did not list Shadow Investigations on his first witness list, she suffered prejudice and so the trial court should have excluded any evidence obtained therefrom.

MCR 2.401(I)(1)(a) provides that, "No later than the time directed by the court . . ., the parties shall file and serve witness lists" that include "the name of each witness . . . ." Under MCR 2.401(I)(2), "The court may order that any witness not listed . . . will be prohibited from testifying at trial except upon good cause shown."

Neither Shadow Investigations nor any of its agents were listed on defendant's first witness list, filed on June 1, 2012 in accordance with the trial court scheduling order. According to defense counsel, he did not retain Shadow Investigations until October 2012. The firm was listed on defendant's final witness list, provided to plaintiff at a pretrial conference in February 2013, at which time defense counsel provided the subject video to plaintiff's counsel.[6] Trial did not occur until August 2013.

---

[6] The videotape taken by Shadow Investigations contained recordings taken on three different dates. It was discovered at trial that defense counsel had only provided two of the three recordings and he stated that this was an unintentional oversight. The trial court ruled that the first two recordings could be shown to the jury but allowed plaintiff and her counsel to view the

Having known that he might present evidence from Shadow Investigations as early as October 2012, defendant should have apprised plaintiff prior to February 2013 and, had trial occurred in February 2013 as originally scheduled, plaintiff would have had a strong argument that the recordings should not have been admitted given the late notice and risk of prejudice. However, those concerns are substantially, if not completely, ameliorated by the fact that trial was adjourned and plaintiff's counsel had six months to seek discovery concerning the video and, if needed, to reconsider his trial strategy in its light. Moreover, the video was not significantly inconsistent with plaintiff's general assertions before and during trial. The video evidence depicted plaintiff working at a beauty salon, grocery shopping, and throwing a small area rug over the railing of her deck. Plaintiff never alleged that she was incapable of these activities, only that she was forced to cut back her work hours and suffered pain while engaging in some physical activities. Indeed, she pointed out moments in the video where she had modified her activity due to pain and limitations.

Under these circumstances, we find no abuse of discretion in the trial court's admission of the video evidence.

Affirmed. No costs to either party. MCR 7.219(A).

/s/ Pat M. Donofrio
/s/ Karen Fort Hood
/s/ Douglas B. Shapiro

---

third recording prior to ruling as to its admissibility. After watching the third recording, plaintiff's counsel waived any particular objection to the third recording.